

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 23, 2008**

**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO.  08-31790 |
| | § | |
| KEYS FITNESS PRODUCTS, L.P. | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | |
| | § | |
| | § | |

### INTERIM ORDER (1) AUTHORIZING POSTPETITION FINANCING FROM JP KFP ACQUISITION, L.P., (2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, (5) MODIFYING AUTOMATIC STAY, AND (6) SCHEDULING A FINAL HEARING

Came on for consideration this 17th day of April 2008, the *Motion for Interim and Final Order (1) Approving Postpetition Financing with JP KFP Acquisition, L.P., (2) Authorizing Use of Cash Collateral, (3) Granting of Liens and Providing Super-Priority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, and (6) Scheduling a Final Hearing* (the "Cash Collateral/Financing Motion"), filed by Keys Fitness Products, L.P., the debtor and debtor-in-possession ("Keys" or the "Debtor").  The Cash Collateral/Financing Motion seeks entry of an interim and final order under sections 105, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy

Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), *inter alia*:

(i)     authorizing the Debtor to obtain post-petition secured financing on a superpriority basis ("DIP Financing") pursuant to 11 U.S.C. §§ 364(c) and (d) on the terms set forth in that certain Debtor-In-Possession Loan Agreement, dated April _, 2008 (the "DIP Loan Agreement") by the Debtor, as borrower, with JP KFP Acquisition, L.P. ("JP Acquisition" or "Senior Lender"), substantially in the form of Exhibit "A" attached to this Interim Order;

(ii)    authorizing the Debtor to execute and deliver the DIP Loan Agreement[1] and any related loan documents (collectively, the "DIP Loan Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

(iii)   granting the DIP Financing and all obligations owing thereunder and under the DIP Loan Documents to the Senior Lender including allowed superpriority administrative expense claim status under Bankruptcy Code § 364(d)(1) and a lien pursuant to Bankruptcy Code § 364;

(iv)    granting to the Senior Lender an automatically perfected first and highest priority security interest in and lien (the "DIP Lien") on all property of the Debtor and/or its estate (hereinafter "DIP Collateral"), with the exception of those funds held on deposit at Wells Fargo Bank, N.A. ("Wells Fargo") in which Senior Lender will be granted a second priority lien, subordinate to the lien granted Wells Fargo in connection with a proposed Letter of Credit Facility;

(v)     authorizing and directing Keys to pay the principal, interest, fees, expenses and other amounts payable (including attorneys' fees and expenses) under the DIP Loan Agreement as such become due;

---

[1] Terms not otherwise defined in this order or the Cash Collateral/Financing Motion shall have the definition ascribed to such term in the DIP Loan Agreement.

(vi)     authorizing the use of Cash Collateral as defined herein in paragraph E(iv), and providing adequate protection through the granting of replacement liens for any diminution in value of the Senior Lender's pre-petition security interests in all Prepetition Collateral, as defined herein in paragraph E(iv);

(vii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the DIP Financing and the transactions contemplated thereby; and

(viii)   scheduling a final hearing (the "Final Hearing") to consider the relief requested in this Cash Collateral/Financing Motion and approving the form of notice with respect to the Final Hearing, as defined herein.

The Court having considered the Cash Collateral/Financing Motion, the Declaration of Reagan Stewart in support of the Debtor's first day motions and orders, the Certificate by Counsel Concerning Motion and Order Pertaining to Use of Cash Collateral and Postpetition Financing, the DIP Documents, and the evidence submitted at the interim hearing commenced on April 17, 2008 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Rules 4001(b), (c), and (d), and 9014 of Bankruptcy Rules; and the Interim Hearing having been concluded on April 17, 2008 and it appearing that approval of the relief requested in the Cash Collateral/Financing Motion at the Interim Hearing is necessary to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing, as defined herein, and otherwise is fair and reasonable and in the best interest of the Debtor and its creditors, customers and employees; and it further appearing that the Debtor is unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code section 503(b)(1); and all objections, if any, to the entry of this order having been withdrawn, resolved or overruled by the Bankruptcy Court; and upon all pleadings filed with the

Bankruptcy Court, all proceedings held before the Bankruptcy Court, and the evidence adduced in connection therewith; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

THE COURT HEREBY FINDS AND CONCLUDES that:

**A.**     <u>Jurisdiction and Venue.</u>   This Bankruptcy Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over this proceeding, and over the persons and property affected hereby. Consideration of the Cash Collateral/Financing Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).   Venue for this case and proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.**     <u>Petition Date</u>.   On April 14, 2008 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, commencing this case.

**C.**     <u>Debtor in Possession</u>. The Debtor has continued in the management and operation of its business and property as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner or official committee of unsecured creditors has been appointed in this case.

**D.**     <u>Debtor's Business Operations</u>.  The Debtor is a Texas limited partnership formed in 1988 with its principal place of business in Garland, Texas.   Keys manufactures and distributes home gym equipment, including weight lifting equipment, treadmills, elliptical machines, stationary exercise bikes and other exercise equipment.   In 2006, the Debtor's annual sales exceeded $100 million.   The Debtor and its general partner, Parkhill Management, Inc. ("Parkhill") have taken all actions necessary to authorize the entry into the DIP Financing and execution of all DIP Loan

Documents is deemed properly authorized and approved by the Debtor. To the extent any dispute over the authorization of Debtor to enter into the DIP Financing exists, this Interim Order shall constitute such authorization.

**E.**     <u>Debtor's Acknowledgements, Agreements, and Stipulations.</u>    Without prejudice to the right of any official committee of creditors appointed by the United States Trustee's office to file an objection to the (i) validity, (ii) amount or (iii) priority of Senior Lender's Prepetition Lien on Prepetition Collateral, the Debtor and Senior Lender admit, stipulate, acknowledge and agree on certain facts (collectively paragraphs E(i) through E(vii) shall be referred to as the "Stipulations):

(i)     In 2005, Keys entered into that certain Second Amended and Restated Loan Agreement dated (the "Loan Agreement" and, together with related documents, including all UCC filings and other documents granting liens and encumbrances, the "Prepetition Loan Documents"), together with Keys Backyard, L.P. ("Keys Backyard") and Keys Health & Fitness, LP ("Keys Health") as borrowers (collectively, the "Borrowers"), and Bank of America ("BoA") as lender, whereby BoA agreed to provide Borrowers with certain loans, credit extensions and other financing arrangements. The Loan Agreement, as amended, provided for a credit facility up to $22,000,000 in the form of advances and letters of credit to fund working capital and other business purposes.

(ii)     Keys and the other Borrowers failed to meet various covenants and other requirements under the Prepetition Loan Documents.   In January 2008, the Senior Lender acquired all of BofA's rights and remedies, title and interest in, and under, the Prepetition Loan Documents.   At the time of the Senior Lender's acquisition of the BofA interest under the Prepetition Loan Documents, Keys (and the other Borrowers) were in default of their obligations under the Loan Agreement and a forbearance agreement between Keys and BofA was in effect. The Senior Lender and Keys have entered into a number of forbearance agreements since the

Senior Lender acquired its interest under the Loan Agreement. Such forbearance agreements have allowed Keys to continue its business operations.

(iii)     As of the Petition Date, the total amount owing to the Senior Lender by Keys (and the other Borrowers) under the Loan Agreement is approximately $13.2 million.

(iv)     The obligations under the Loan Agreement are secured by liens and security interests ("Prepetition Liens") against substantially all of the Debtor's assets ("Prepetition Collateral"), including all cash and proceeds of the foregoing ("Cash Collateral") as well as all of Keys Backyard's assets and all assets of Keys Health.

(v)     The Debtor represents that all of the Debtor's cash, including cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral constitutes Prepetition Collateral, and is therefore Senior Lender's Cash Collateral.

(vi)     The Debtor and its estate have no offsets, defenses, claims, objections, actions or challenges to the obligations owing to the Senior Lender under the Prepetition Loan documents or the Senior Lender's lien in the Prepetition Collateral.

(vii)     The Senior Lender's claims and liens securing Debtor's obligations under the Prepetition Loan Documents are valid, binding, enforceable and unavoidable and are senior to any prepetition liens or security interests in the Prepetition Collateral, with the possible exception of the Permitted Encumbrances, but only to the extent a Permitted Encumbrance was senior under applicable state law, as of the Petition Date, to Senior Lender's Prepetition Liens on the Prepetition Collateral.

**F.     Findings Regarding the Post-Petition Financing and Use of Cash Collateral**

(i)     *Need for Postpetition Financing and Use of Cash Collateral.* The Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Financing is immediate and critical to enable the Debtor to continue operations and to administer and preserve the value of its estate.

The ability of the Debtor to finance its operations, maintain business relationships with its vendors, suppliers and customers, and pay employees requires the availability of working capital from the DIP Financing and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor and its bankruptcy estate, creditors, customers and employees. Moreover, without the use of Cash Collateral and approval of the DIP Financing, the Debtor will not be able to successfully reorganize its operations and debts and emerge from chapter 11. The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course of business without the DIP Financing and authorized use of Cash Collateral.

(ii)     *No Credit Available on More Favorable Terms*.     Given its current financial condition and financing arrangements, the Debtor is unable to obtain financing from sources other than the Senior Lender on terms more favorable than the DIP Financing. The Debtor has been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtor has also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b) and 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and the estate that is subject to a lien. Financing on a post-petition basis is not otherwise available without the Debtor granting, pursuant to 11 U.S.C. § 364(d), (a) "super-priority" administrative expense claims and liens having priority over any and all administrative expenses, including, without limitation, the kind specified in 11 U.S.C. §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), and 726 (except as expressly provided herein), (b) perfected security interests in and liens on the Debtor's assets, and/or (c) the other protections set forth in this Interim Order.

(iii) *Use of Proceeds of the DIP Facility.* As a condition to the entry into the DIP Financing and the agreement with the Senior Lender for the use of Cash Collateral, Senior Lender, in its capacity as both Keys' prepetition lender and debtor-in-possession lender, requires, and Keys has agreed, that proceeds of the DIP Financing shall be used in a manner consistent with the terms and conditions of the DIP Loan Agreement and in accordance with the budget, as the same may be modified from time to time consistent with the terms of the DIP Loan Agreement (hereinafter referred to as the "Budget") for (a) working capital purposes of the Debtor as specifically set forth in the Budget, including but not limited to, funding the issuance of letters of credit pursuant to a letter of credit facility with Wells Fargo, and (b) costs of administration of the Case, and payment of such prepetition expenses *as consented to by the Senior Lender* and as approved by the Bankruptcy Court.

**G.**   <u>DIP Loan Documents.</u>  The Debtor seeks authority to (i) enter into the DIP Financing on the terms described herein and in the DIP Loan Agreement, and (ii) use Cash Collateral on the terms described herein to fund its operations and administer its chapter 11 proceeding. At the Final Hearing, the Debtor will seek final approval of the DIP Financing, including the DIP Loan Documents, and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the Senior Lender, notice of which Final Hearing and Final Order will be provided in accordance with this order ("Interim Order") (the Final Order and Interim Order are collectively referred to as "DIP Financing Orders").

**H.**   <u>Adequate Protection.</u>  As a result of use of Cash Collateral authorized herein pursuant to the Budget and the imposition of the automatic stay, Senior Lender is entitled to adequate protection in the Prepetition Collateral to the extent of its interest in Prepetition Collateral, including Cash Collateral, during Keys' chapter 11 proceeding.  As adequate protection, Senior Lender will receive replacement liens ("Replacement Lien") in all assets of the Debtor and its

estate, including the Prepetition Collateral, such Replacement Lien being subordinated only to the DIP Lien on the Debtor's assets and the lien provided to Wells Fargo to secure the letter of credit facility.

**I.** <u>Business Judgment and Good Faith</u>. The terms and conditions of the DIP Financing and DIP Loan Documents are fair and reasonable, are the best terms for post-petition financing currently available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The DIP Financing and the protections granted for the use of Cash Collateral were both negotiated in good faith and at arm's length between the Debtor and Senior Lender, and any credit extended and advances made to the Debtor pursuant to the DIP Loan Agreement shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code 364(e).

**J.** <u>Notice.</u> The Debtors has provided notice of the Interim Hearing and the emergency relief requested in the Cash Collateral/Financing Motion, by facsimile, email, overnight courier, or hand delivery to (a) the United States Trustee; (b) counsel to Senior Lender; (c) counsel to Wells Fargo, and (d) the parties included on Keys' list of twenty (20) largest unsecured creditors (collectively, the "Initial Notice Parties"). The Debtor has made reasonable effort to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order.

**K.** <u>Entry of Interim Order.</u> Keys requests immediate entry of this Interim Order pursuant to Federal Rule of Bankruptcy Procedure 4001(b) and (c). Entry of this Interim Order is in the best interest of the Debtor's bankruptcy estate and its creditors as the implementation of the Interim Order will, among other things, sustain the operation and enhance the value of the Debtor's

bankruptcy estate, avoid immediate and irreparable harm and enhance the Debtor's prospect for a successful reorganization.

Therefore, based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. <u>Interim Financing Approved</u>. The relief sought by Debtor in its Cash Collateral/Financing Motion is granted, the DIP Financing is approved on an interim basis up to $1.0 million, and the use of Cash Collateral on an interim basis pursuant to the Budget is authorized, subject to the terms and conditions set forth in the Interim Order and DIP Loan Agreement. This Interim Order is valid immediately and is fully effective upon its entry.

2. <u>DIP Financing Authorization</u>. The DIP Loan Documents are hereby approved to the extent necessary for the Interim Financing. The Debtor and Parkhill are expressly and immediately authorized and empowered to enter into, execute and deliver the DIP Loan Documents together with any certificates, resolutions or any other documents required to effectuate the DIP Financing, and to incur and perform all obligations in accordance with and subject to this Interim Order and the DIP Loan Documents, and to deliver all instruments and documents that may be required or necessary for the performance of the Debtor under the DIP Loan Documents and this Interim Order. The Debtor is hereby authorized and directed to pay the principal, interest, fees, expenses and the amounts described in the DIP Loan Documents as those obligations become due (including, without limitation, reasonable attorneys' fees and expenses, whether incurred prior to or after the Petition Date) in connection with, <u>inter alia</u>, the negotiation, preparation and documentation of the DIP Loan Documents. All funds advanced under the DIP Loan Documents and interest thereon, and all fees, costs, and expenses of the

Debtor to the Senior Lender under the DIP Loan Documents and this Interim Order constitute post-petition obligations enforceable against the Debtor and any successor-in-interest, including a chapter 7 or chapter 11 trustee, examiner or examiner with expanded powers, in accordance with the terms of the DIP Loan Documents.

3.      Authorization to Borrow.   Pending the Final Hearing, the Debtor shall have continuing authority to borrow pursuant to the DIP Loan Documents and this Interim Order.  The Debtor is authorized and granted the right to borrow up to $1.0 million under the DIP Loan Documents on the conditions set forth in (i) this Interim Order, (ii) the DIP Loan Documents and (iii) the Budget.

4.      Postpetition Liens.   Effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the Senior Lender is hereby granted the DIP Lien, which constitutes a continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on the DIP Collateral which includes any and all of the assets of the Debtor or the bankruptcy estate and all of the products and proceeds all property of the Debtor, including without limitation all Cash Collateral, with the exception of (i) funds held on deposit at Wells Fargo securing letters of credit issued by Wells Fargo in which case Senior Lender will have a second lien subordinate to Wells Fargo's first lien on all funds held on deposit at Wells Fargo which secure outstanding letters of credit, and (ii) causes of action under Chapter 5 of the Bankruptcy Code.  To avoid any confusion, the DIP Lien securing the DIP Financing granted to the Senior Lender under this Interim Order attaches to the DIP Collateral, which includes all Prepetition Collateral, including all Cash Collateral of the Debtor.

5.     <u>DIP Lien is Properly Perfected</u>.  In order to secure the DIP Financing provided by Senior Lender to the Debtor under the DIP Loan Agreement, the Senior Lender will receive, pursuant to the Financing Orders and the DIP Loan Agreement, fully valid and perfected, enforceable and unavoidable first-priority priming liens under sections 364(c) and (d) of the Bankruptcy Code in the DIP Collateral (including without the necessity of the execution, filing and recordation of security agreements, financing statements or otherwise); <u>provided</u> that the DIP Collateral shall exclude any avoidance actions under Chapter 5 of the Bankruptcy Code. Notwithstanding the foregoing, the Senior Lender will have a second lien to secure the DIP Financing on all funds held on deposit at Wells Fargo to secure the outstanding letters of credit issued by Wells Fargo and other amounts due and owing under the Wells Fargo letter of credit facility.  The DIP Lien shall encompass Senior Lender's second lien on funds held on deposit at Wells Fargo to secure all outstanding letters of credit and other amounts due under the Wells Fargo letter of credit facility.

6.     <u>Priority of DIP Lien, Replacement Lien and Superpriority Administrative Expense</u>.  All of the borrowings under the DIP Loan Agreement shall have the status of a superpriority administrative expense claim in the Chapter 11 Cases pursuant to section 364(c)(1) of the Bankruptcy Code, having priority over any and all administrative expenses, whether heretofore or hereafter incurred, of any kind or nature specified in sections 503(b), 507(b) and upon entry of the Final Order, 506(c); provided that the DIP Lien and the Replacement Lien in favor of the Senior Lender and Senior Lender's superpriority administrative expense claim shall be subject only to (i) the following (the "Carve-Out Expenses"):  (A) fees and disbursements incurred and allowed on a final basis on and after the Petition Date and prior to the Revolving Termination Date by professionals retained by the Debtor and any official committee of unsecured creditors (the "Committee") appointed by the United States Trustee, (B) fees and

disbursements incurred and allowed on and after the Revolving Termination Date by professionals retained by the Debtor and the Committee with respect to the Chapter 11 Cases, up to a maximum aggregate amount (as to subsections (A) and (B) collectively) not to exceed $100,000, and (C) any statutorily mandated costs and fees of the United States Trustee with respect to the Chapter 11 Cases, provided, however, that the Carve-Out Expenses shall not be used to pay professional fees and disbursements incurred in connection with asserting any claims or causes of action whatsoever against the Senior Lender, including formal discovery proceedings in anticipation thereof, and/or challenging the DIP Lien with respect to the DIP Financing; and (ii) Permitted Encumbrances.

7.     <u>Payment of Professional Fees</u>.  As long as (i) no unwaived Event of Default under the DIP Loan Agreement or the DIP Financing Orders has occurred and (ii) the Senior Lender has not given the professionals appointed in the Chapter 11 Cases written notice of the occurrence of any such Event of Default, the Debtor shall be authorized to pay compensation and reimbursement of expenses authorized to be paid under Bankruptcy Code sections 330 and 331 or otherwise pursuant to an order of the Bankruptcy Court, as the same may be due and payable, and such payments shall not reduce the Carve-Out Expenses.  Notwithstanding the foregoing, Senior Lender reserves the right to object to any such professional fees and expenses on any grounds.

8.     <u>No 506(c) Charges or Marshalling</u>.  Solely upon entry of the Final Order approving the DIP Financing, no cost or expense or other charge, lien, assessment or claim (including, but not limited to, any cost or expense of administration of the Chapter 11 Cases or any future proceeding that may develop out of such cases, including liquidation in Chapter 7 under the Bankruptcy Code, but excluding the Carve-Out Expenses) shall be charged by the Debtor or any subsequently appointed trustee against the Senior Lender, the DIP Collateral, or

the Prepetition Collateral pursuant to Bankruptcy Code section 506(c) or otherwise without the prior written consent of the Senior Lender, and no such consent shall be implied from any action, inaction or acquiescence by the Senior Lender.  The Senior Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Collateral.

9.      <u>Committee Investigation</u>.   Unless within sixty days after the earlier of (i) the date the Committee is appointed by the United States Trustee's office or (ii) the date the Final Order is entered, the Committee commences an adversary proceeding with the Bankruptcy Court challenging the validity, perfection, priority or enforceability of the Senior Lender's liens on the Prepetition Collateral or seeking to void, avoid, equitably subordinate, or otherwise challenge, the prepetition obligations owing to the Senior Lender or the Senior Lender's prepetition liens, the Committee shall be deemed to have approved and confirmed in all respects the prepetition obligations owing to the Senior Lender and prepetition liens provided to the Senior Lender under the Loan Documents to the same extent as set forth in paragraph E hereof.

10.      <u>No Obligation to Extend Credit</u>.  The Senior Lender shall have no obligation to make any loan or advance under the DIP Loan Agreement unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Agreement and this Interim Order have been satisfied in full or waived by the DIP Senior Lender in its sole discretion.

11.      <u>Use of Proceeds From the DIP Financing</u>.  From and after the Petition Date, the Debtor shall use advances of credit under the DIP Financing only for the purposes specifically set forth in this Interim Order, the DIP Loan Agreement and in compliance with the Budget, a copy of which is attached to this Interim Order as Exhibit "B".

12.      <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, the Debtor is authorized to use Cash Collateral to meet payroll and pay other

operating expenses essential to the continuation of the Debtor's operations as agreed by the Senior Lender in accordance with the Budget and as otherwise approved by an order of this Court, including the Interim Order.[2]

13.  <u>Adequate Protection Replacement Liens for Use of Cash Collateral</u>.  As adequate protection of the interests of the Senior Lender in the Prepetition Collateral against any diminution in value of such interests on account of the granting of a lien for the DIP Financing, the Debtor's use of Cash Collateral and the imposition of the automatic stay, the Debtor hereby grants to the Senior Lender the Replacement Lien, which constitutes a valid, binding, enforceable and automatically perfected replacement lien and security interest in and upon all of the assets of the Debtor, whether acquired or generated before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof.  Notwithstanding the foregoing, the Replacement Lien shall not attach to causes of action under Chapter 5 of the Bankruptcy Code or to the Carve-out Expenses, and shall constitute a third lien on the funds on deposit at Wells Fargo securing outstanding letters of credit, subordinate to the first lien of Wells Fargo and the second lien granted in connection with the DIP Lien.  The Replacement Lien is subordinate only to the lien granted the Senior Lender to secure the DIP Financing, but senior to all other security interests in, liens on, or claims against any of the DIP Collateral. To the extent such adequate protection is insufficient to adequately protect the Senior Lender's interest in the Prepetition Collateral, the Senior Lender is hereby granted all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code.  To that extent that section 362 of the Bankruptcy Code or any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment or

---

[2] This order is limited to Keys Fitness, LP and does not apply to Keys Backyard LP.  Hence Keys Backyard LP is not authorized to use Cash Collateral, as defined in this Interim Order, under this Interim Order and does not have Senior Lender's consent for the use of Cash Collateral.

perfection of the liens and security interest authorized or created herein, or would otherwise would impose filing or registration requirements with respect to the Replacement Lien, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, otherwise applicable federal law, and the judicial power of this Court.

14. _Budget Modification_. The Budget, and any modification to or amendment or update of the Budget, shall be in form and substance reasonably acceptable to the Senior Lender, in its capacity as both prepetition lender and post-petition lender under the DIP Loan Agreement. The Budget may be amended or modified in writing from time to time with the consent of the Senior Lender in its reasonable discretion. The Debtor shall follow the procedure set out in the DIP Loan Agreement in connection with operating under the Budget.

15. _Cash Collateral Events of Termination_. The occurrence of any of the following shall terminate Senior Lender's consent to use Cash Collateral:

- filing of a plan of reorganization by the Debtor which fails to satisfy all obligations under the DIP Financing;

- use of Cash Collateral in a manner inconsistent with the Budget and which is not otherwise consented to by the Senior Lender;

- filing a motion, adversary proceeding or other pleading by the Debtor with respect to the Replacement Lien granted to the Senior Lender including challenging, subordinating or invalidating the Replacement Lien.

- the entry of an order amending, supplementing, staying, vacating or otherwise modifying this Interim Order with respect to the adequate protection granted Senior Lender for use of Cash Collateral;

- the appointment of an interim or permanent trustee in the Chapter 11 Cases or the appointment of a receiver or an examiner in the Chapter 11 Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtor without the Senior Lender's consent;

- the sale without the Senior Lender's consent, of all or substantially all of the Debtor's assets either through a sale under section 363 of the Bankruptcy Code,

through a confirmed plan of reorganization in the Chapter 11 Cases, or otherwise that does not provide for payment in full of the obligations under the DIP Loan Documents;

• the dismissal of the Chapter 11 Cases or the conversion of the Chapter 11 Cases from cases under chapter 11 to case under chapter 7 of the Bankruptcy Code or the Debtor shall file a motion or other pleading seeking the dismissal of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise;

• the Debtor shall fail to achieve any of the milestones established pursuant to section 6.11(c) of the DIP Loan Agreement;

• entry of an order granting any lien senior to the Replacement Liens or DIP Lien;

• an Event of Default which is not timely cured under the DIP Loan Agreement or this Interim Order.

16. <u>Automatic Stay.</u> The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order and the DIP Loan Agreement, including, without limitation, to: (a) permit the Debtor to grant the Replacement Lien and the DIP Lien; (b) permit the Debtor to perform such acts as otherwise required under this Interim Order and the DIP Loan Agreement; and (c) permit the Senior Lender to take all acts necessary and enforce all remedies provided Senior Lender under the DIP Loan Documents or under this Interim Order.

17. <u>No Financing Statement Required.</u> This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Lien and the Replacement Lien, without the necessity of filing or recording any financing statement or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Lien and the Replacement Lien. Notwithstanding the foregoing, the Senior Lender is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to evidence the DIP Lien and the Replacement Lien. All such financing statements,

notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however,* that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Lien or the Replacement Lien. The Debtor is authorized and directed, promptly upon demand by the Senior Lender, to execute and deliver to the Senior Lender all such financing statements, notices and other documents as the Senior Lender may reasonably request. The Senior Lender is hereby authorized to file this Interim Order as evidence of the DIP Lien and the Replacement Lien in lieu of a financing statement or similar filing. Notwithstanding anything herein to the contrary, no proceeds from the DIP Financing or Cash Collateral, including any of the Carve-Out Expenses, may be used to object to or contest in any manner, or raise any defenses to, the validity, perfection, priority or enforceability of the obligations owing to the Senior Lender under the DIP Loan Documents, or the DIP Lien or Replacement Lien or asserting any claim or causes of action whatsoever against the Senior Lender in such capacity.

18.     <u>No Other Liens Senior or Equal to DIP Lien.</u>  Except for Permitted Encumbrances and the lien granted by this Court's order to Wells Fargo Bank N.A. on funds in the bank account at Wells Fargo securing letters of credit, neither the Debtor nor any successor chapter 11 trustee or chapter 7 trustee shall grant or permit a lien that is senior to, or made pari passu with, the DIP Lien or the Replacement Lien in the DIP Collateral during the Chapter 11 Cases or any superseding chapter 7 case.

19.     <u>Exercise of Remedies Under DIP Loan Agreement.</u>  The Debtor hereby irrevocably appoints the Senior Lender during the term of the DIP Financing as its lawful attorney-in-fact to take any action to preserve, maintain, protect or enforce the rights and interests of the Debtor with respect to the DIP Collateral, including, without limitation, to (i) enforce, cure any default or otherwise act with respect to any leases, service contracts,

management contracts, intellectual property licenses or marketing contracts or any other agreements that are part of, pertain to or affect any of the DIP Collateral, (ii) take all such action and to execute all such documents as the Senior Lender deems necessary or desirable to preserve or protect all accounts included in the DIP Collateral and (iii) sue for, demand or collect any sums owing to the Debtor under any accounts or under leases or other agreements included in the DIP Collateral. The Senior Lender shall forward to the Debtor, in due course, a copy of any such document executed on behalf of the Debtor; provided, however, that the liens and security interest granted to the Senior Lender hereunder shall be deemed perfected, subject to further order of this Court, without the filing or recording of any instrument or UCC financing statement.

20. <u>Events of Default Under DIP Loan Agreement.</u> As further set forth in the DIP Loan Agreement, Events of Default thereunder shall include the following:

- The failure of the Debtor to pay when due any principal of or interest on the Note, or any fees, including, without limitation, the Unused Fee, charges or any other amounts payable to the Senior Lender under the DIP Loan Agreement or under the Note or the other Loan Documents;

- The failure, refusal or neglect of the Debtor to observe, perform or comply with any covenant or agreement contained in the DIP Loan Agreement, any of the other Loan Documents, and the continuation of such failure, refusal or neglect for a period of ten (10) days following notice thereof from the Senior Lender to the Debtor;

- Any representation, warranty, certification or statement made by the Debtor (either for itself or for any other Person) in the DIP Loan Agreement or by the Debtor or any other Person on behalf of the Debtor in any certificate, financial statement or other document delivered pursuant to the DIP Loan Agreement or any other Loan Document shall prove to have been untrue in any material respect when made;

- Any other occurrence of a default or an event of default under the DIP Loan Agreement;

- Other than with respect to debts incurred prior to the Petition Date, one or more judgments or orders for the payment of money in excess of $250,000.00 shall be rendered against the Debtor and such judgment or order (i) shall continue unsatisfied and unstayed (unless bonded with a supersedeas bond at least equal to such judgment or order) for a period of thirty

(30) days, or (ii) is not fully paid and satisfied at least ten (10) days prior to the date on which any of its assets may be lawfully sold to satisfy such judgment or order; or

- The occurrence of any of the following in the Chapter 11 Cases:

- (i) the bringing of a motion, taking of any action or the filing of any plan of reorganization or disclosure statement attendant thereto by the Debtor in the Chapter 11 Cases which does satisfy all obligations in full under the DIP Loan Documents; (ii) to obtain additional financing under section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to the DIP Loan Agreement; (iii) granting by the Debtor of a lien on the DIP Collateral other than Permitted Encumbrances; (iv) use of Cash Collateral in a manner inconsistent with the Budget which is not otherwise committed to by the Senior Lender; (v) any action by the Debtor with respect to the rights and remedies of the Senior Lender or to its respective interests in the DIP Collateral and any other collateral security for the DIP Financing, including, without limitation, any such action or actions which seek to reduce, set-off or subordinate the obligations or challenge the Senior Lender's DIP Lien in any of the Collateral.

- the entry of an order in the Chapter 11 Case confirming a plan of reorganization for the Debtor that does not contain a provision providing for repayment in full in cash of the obligations under the DIP Loan Documents on or before the effective date of such Plan (unless the Senior Lender in its sole discretion elects to receive other consideration as repayment of such obligations).

- the entry of an order amending, supplementing, staying, vacating or otherwise modifying the DIP Loan Agreement or the DIP Financing Orders without the written consent of the Senior Lender or the filing of a motion for reconsideration with respect to the DIP Financing Orders, and in the event any such motion is filed by a party other than the Debtor, the Senior Lender having determined that such motion has a reasonable likelihood of success;

- the allowance of any claim or claims under section 506(c) of the Bankruptcy Code against or with respect to any of the DIP Collateral.

- the appointment of an interim or permanent trustee in the Chapter 11 Cases or the appointment of a receiver or an examiner in the Chapter 11 Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtor without the Senior Lender's consent; or the sale without the Senior Lender's consent, of all or substantially all of the Debtor's assets either through a sale under section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Chapter 11 Cases, or otherwise that does not provide for payment in full of the obligations under the DIP Loan Documents;

- the dismissal of the Chapter 11 Cases or the conversion of the Chapter 11 Cases from cases under chapter 11 to case under chapter 7 of the Bankruptcy Code or the Debtor shall file a motion or other pleading seeking the dismissal of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise;

- the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow one or more creditors to execute upon or enforce a Lien on any DIP Collateral, including taxing or regulatory authorities;

- the commencement of a suit or action against the Senior Lender, which suit or action asserts by or on behalf of the Debtor, or the Committee in any of the Chapter 11 Cases, any claim or legal or equitable remedy which seeks subordination liens granted to the Senior Lender;

- the entry of an order in any of the Chapter 11 Cases avoiding or requiring repayment by the Senior Lender of any portion of the payments made pursuant to the DIP Loan Documents;

- the failure of any the Debtor to timely perform any of its obligations under the DIP Financing Orders;

- the entry of an order in any of the Chapter 11 Cases granting any super priority administrative claim or lien superior to the DIP Lien or Replacement Lien other than the lien granted to Wells Fargo Bank, N.A.;

- the DIP Financing Orders cease to be in full force and effect in any respect;

- the Debtor shall fail to achieve any of the milestones established pursuant to section 6.11(c) of the DIP Loan Agreement.

21. <u>DIP Financing Termination.</u> In addition to any rights and remedies of the Senior Lender under the terms of this Interim Order, the DIP Loan Agreement shall immediately and automatically terminate and the amounts then outstanding thereunder shall be immediately due and payable upon the Revolving Termination Date or an Event of Default.

22. <u>Rights Under DIP Loan Agreement.</u> Notwithstanding any otherwise applicable law, the Senior Lender is entitled to all of the rights, benefits, privileges and remedies set forth or provided herein or to the extent set forth in the DIP Loan Documents, including, but not limited to, all of the rights, benefits, privileges and remedies available to the Senior Lender upon the occurrence and during the continuance of an Event of Default. To the extent set forth in the DIP Loan Documents and subject to the terms thereof (including those related to notice), the automatic stay of Bankruptcy Code section 362 (to the extent applicable) is vacated solely to

permit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies as set forth in and subject to the provisions of the DIP Loan Agreement, including, but not limited to, the termination by the Senior Lender of its obligation to make advances under the DIP Loan Agreement, charging the Debtor the default rate of interest in the DIP Loan Agreement, declaring all amounts under the DIP Loan Agreement to be immediately due and payable in full, and all other remedies under the DIP Loan Agreement provided that the Senior Lender's remedies relating solely to the DIP Collateral, including (i) the right to set off any amounts held as Cash Collateral or in any bank accounts maintained by Debtor and (ii) the right to foreclose on the DIP Collateral, may only be exercised if no order has been issued by the Court which precludes or enjoins the Senior Lender from exercising its remedies against the DIP Collateral within five (5) business days after Senior Lender files a Notice of Default with the Court which describes the facts surrounding the specific default (or defaults) triggered by the Debtor. Notwithstanding the foregoing, Senior Lender shall not have the right to offset funds on deposit at Wells Fargo securing the letters of credit issued by Wells Fargo until all obligations due Wells Fargo in connection with the issuance of any and all letters of credit have been paid by the Debtor

23. <u>Expenses Under the DIP Loan Documents.</u> The Debtor shall pay in accordance with the DIP Loan Agreement the reasonable expenses, fees and costs of the Senior Lender, including the commitment fee at the time of the Closing on the DIP Loan Agreement. Notwithstanding the foregoing, counsel to the Senior Lender shall provide Notice of its fees and expenses (which notice sets forth the amount of such fees and expenses) to Debtor, the United States Trustee's office and if appointed, counsel to the Committee. Counsel to the Senior Lender shall also file such Notice (without attachments) with the Court. The Debtor, the United States Trustee's Office and the Committee, if appointed, shall have five (5) business days from the date

of such Notice to object. Such objection, if any, must be filed with the Bankruptcy Court by 5:00 p.m. Central Time on the fifth (5th business day) following such Notice. In the absence of a timely objection, the Debtor shall be authorized and directed to pay promptly the amount of counsel's fees and expenses set forth in the Notice.

24. <u>No Waiver By Senior Lender.</u> No failure or delay on the part of the Senior Lender in the exercise of any power, right or privilege under any or all of the DIP Loan Documents, the Bankruptcy Code and/or other applicable law, shall impair such power, right or privilege or be construed to be a waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege. All rights and remedies existing under the DIP Loan Documents are cumulative to, and not exclusive of, any rights or remedies otherwise available.

25. <u>Debtor Authorized to Implement DIP Financing.</u> The Debtor is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the DIP Loan Documents, as the Senior Lender may reasonably require or which otherwise may be deemed reasonably necessary by the Senior Lender to effectuate the terms and conditions of this Interim Order and the DIP Loan Documents. The Debtor and the Senior Lender are hereby authorized to implement, in accordance with the terms of the DIP Loan Agreement, any non-material modifications of the DIP Loan Agreement without further order of this Court.

26. <u>Continuing Obligations Under DIP Loan Agreement.</u> The Debtor's obligations to provide information with respect to and otherwise comply with the undertakings and agreements set forth in this Interim Order and the DIP Loan Agreement shall continue until the payment,

indefeasibly, in full of the DIP Financing and the Senior Lender's commitment to lend to the Debtor under the DIP Loan Agreement is terminated.

27.     Interim Order Binding on Successors.   Interim Order shall be binding upon the Debtor and its successors and assigns, including, without limitation, any chapter 11 trustee or chapter 7 trustee or similar responsible person hereafter appointed as a representative of the Debtor's estate and any such successors or assigns, without further order of this Court, and the Debtor and its successors and assigns shall be deemed authorized and directed to comply with the provisions of the DIP Loan Documents; provided, however, that the Senior Lender shall have no obligation to extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.

28.     Interim Order Not Modified by Subsequent Orders.   Until payment in full of the DIP Financing, the liens, security interests, superpriority administrative claims, and other rights and remedies granted to the Senior Lender hereunder or under the DIP Loan Agreement and any actions taken pursuant hereto shall survive, and (except with the express written consent of the Senior Lender) shall not be modified, altered or impaired in any manner by (a) any other financing or extension of credit or incurrence of debt by the Debtor (under section 364 of the Bankruptcy Code or otherwise) with respect to the DIP Collateral encumbered by the Senior Lender's DIP Lien or Replacement Lien and security interest (other than the Permitted Encumbrances), (b) the entry of an order confirming any plan or plans of reorganization for the Debtor or its affiliate, (c) the entry of an order converting any of these Chapter 11 Cases to chapter 7 or dismissing either of the Chapter 11 Cases, or (d) the maturity of the DIP Financing.

29.     Liens Provided Under Interim Order Continuing.   This Interim Order and the DIP Loan Agreement shall continue in force in the Chapter 11 Cases or any superseding chapter 7

case, and the DIP Lien and Replacement Lien granted to the Senior Lender and the superpriority administrative expense claims and payment provisions contained in the DIP Loan Agreement and this Interim Order shall continue in effect until all obligations under the DIP Loan Agreement and this Interim Order are indefeasibly satisfied, paid, and discharged.

30. <u>Conditions Subsequent</u>. The following will be conditions subsequent to the entry of the Interim Order, subject to Senior Lender's right to waive any of the conditions below – either in whole or in part:

- receipt by the Senior Lender of (i) the DIP Loan Agreement, properly executed by the Debtor and Parkhill, as general partner, and (ii) evidence acceptable to the Senior Lender that the Debtor has paid all fees and expenses required to be paid by the Debtor as of the date of such Advance;

- receipt by the Senior Lender of all resolutions, certificates or documents required under the DIP Loan Agreement;

- satisfaction of all conditions contained in section 4.2 of the DIP Loan Agreement in the case of an Advance; and

- all other documents, instruments, certificates and information to be delivered on or before the Closing Date pursuant to the terms of the DIP Loan Agreement.

31. <u>Good Faith Protections of Bankruptcy Code Section 364.</u> Having been found to be extending the DIP Financing to the Debtor in good faith, the Senior Lender is entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the funding provided and the superpriority administrative expense claims and liens created or authorized by this Interim Order in the event that this Interim Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. If any provision of this Interim Order is hereafter modified, vacated, reversed or stayed by subsequent order of this or any other court for any reason, such modification, vacation, reversal or stay shall not affect the validity, enforceability and priority of any of the funding provided, or the claims, liens and security interests granted to

the Senior Lender under this Interim Order and the DIP Loan Agreement, and prior to the effective date of any such modification, vacation, reversal or stay, the validity, enforceability or priority of the funding provided, and the claims, liens and security interests of the Senior Lender shall be governed in all respects by the original provisions of this Interim Order and the Senior Lender shall be entitled to all of the rights, privileges and benefits granted herein, including, without limitation, the liens, security interests and priorities granted to the Senior Lender in this Interim Order with respect to the DIP Loan Agreement.

32. <u>Automatic Stay to Allow Implementation of DIP Financing</u>. The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit any action authorized or contemplated by this Interim Order or the DIP Loan Agreement, and to carry out the terms thereof; <u>subject</u>, <u>however</u>, to the satisfaction of any notice, procedural and other conditions contained in this Interim Order or the DIP Loan Agreement; and <u>subject</u> <u>further</u>, <u>however</u>, to the requirement that the Senior Lender provide five (5) business days notice to the Debtor, the Committee and its respective counsel prior to exercising its remedies under the Interim Order or the DIP Loan Agreement in the event of a default hereunder or thereunder.

33. <u>Governing Law</u>. The Bankruptcy Code and the laws of the State of New York shall govern the provisions of the DIP Loan Agreement.

34. <u>Inconsistency Between Interim Order and DIP Loan Documents</u>. In the event of any irreconcilable inconsistency between this Interim Order and any agreement heretofore or hereafter entered into by and between the Debtor and the Senior Lender, the terms of this Interim Order shall govern and control.

35.     <u>Adherence to Budget.</u>   The Senior Lender shall have no liability to any third party, and shall not be deemed to be in control of the operations of the Debtor, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtor by virtue of its commenting on or requiring the Budget and other requirements under the DIP Loan Agreement and the DIP Financing Orders.

36.     <u>Reservation of Jurisdiction</u>.   This Court retains and reserves jurisdiction to enforce all provisions of this Interim Order.

37.     <u>Final Hearing</u>. The Debtor shall, on or before April __, 2008, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the Official Service List; all parties having been given notice of the Interim Hearing; counsel to any official committee of unsecured creditors appointed in these cases; the Office of the United States Trustee; and all parties who have filed requests for notice under Federal Rule of Bankruptcy Procedure 2002.   The notice of entry of this Order shall state that any party in interest objecting to the DIP Facility shall file written objections with the Court no later than 4:00 p.m. on May 6, 2008, which objections shall be served so that the same are received on or before such date by: (a) Neligan Foley, LLP, 325 N. St. Paul, Suite 3600 Dallas, Texas 75201 (Attn: Patrick J. Neligan, Jr.),  Attorneys for the Debtor; (b) Stroock & Stroock & Lavon LLP, 180 Maiden Lane, New York, New York, 10038 (Attn:  Eric M. Kay, Esq); (c) K&L Gates, 1717 Main Street, Suite 2800, Dallas, Texas  75201 (Attn:  William Finklestein); and (d) the Office of the United States Trustee.

The Final Hearing will be held on May 8, 2008 at 1:30 p.m.

**\* \* \* END OF ORDER \* \* \***

Prepared by:

Patrick J. Neligan, Jr.
David Ellerbe
Nancy Ribaudo
NELIGAN FOLEY LLP
Republic Centre
325 N. St. Paul, Suite 3600
1700 Pacific Avenue, Suite 2600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

PROPOSED COUNSEL FOR DEBTOR AND
DEBTOR-IN-POSSESSION

40908v.7