# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KEYS FITNESS PRODUCTS, LP** | § | **CASE NO.  08-31790-HDH-11** |
| **KEYS BACKYARD, L.P.** | § | **CASE NO.  08-30914-HDH-11** |
| | § | |
| **DEBTORS.** | § | **Jointly Administered Under** |
| | § | **Case No. 08-31790-HDH-11** |
| | § | |
| | § | |

_____

## DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION, AS MODIFIED
_____

NELIGAN FOLEY LLP

Patrick J. Neligan, Jr.
TBN: 14866000
pneligan@neliganlaw.com
David Ellerbe
TBN: 06530600
dellerbe@neliganlaw.com
Douglas J. Buncher
TBN: 03342700
325 N. St. Paul
Suite 3600
Dallas, Texas 75201
(214) 840-5300
(214) 840-5301 fax

ATTORNEYS FOR KEYS FITNESS PRODUCTS,
LP AND KEYS BACKYARD, L.P.

Dated:   September 11, 2008

# TABLE OF CONTENTS

**ARTICLE I DEFINITIONS, CONSTRUCTION, AND INTERPRETATION**.......................1

**ARTICLE II UNCLASSIFIED CLAIMS** ....................................................................8

2.01.   **Administrative Claims**...............................................................................8
2.02.   **Priority Tax Claims.**..................................................................................9
2.03.   **U.S. Trustee Fees.**...................................................................................10

**ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS** ...................10

3.01.   **Classification** ...........................................................................................10
3.02.   **Claims Against or Interests in Fitness** .................................................10
3.03.   **Claims Against or Interests in Backyard**.............................................10

**ARTICLE IV IDENTIFICATION OF UNIMPAIRED AND IMPAIRED** ...........11

4.01.   **Unimpaired Claims** .................................................................................11
4.02.   **Impaired Claims**......................................................................................11
4.03.   **Impaired Interests**..................................................................................11
4.04.   **Controversy Concerning Impairment**...................................................11

**ARTICLE V TREATMENT OF CLAIMS AND INTERESTS** ...........................12

5.01.   **Other Priority Claims – Class 1 Claims Against Fitness and Backyard** ...................12
5.02.   **Secured Tax Claims – Class 2 Claims Against Fitness and Backyard**......................12
5.03.   **JP Acquisition Secured Claim – Class 3 Claims Against Fitness and Backyard** .......13
5.04.   **Other Secured Claims – Class 4 Claims Against Fitness and Backyard** ...................13
5.05.   **General Unsecured Claims Against Fitness – Class 5** .....................................14
5.06.   **General Unsecured Claims Against Backyard – Class 5**....................................16
5.07.   **Subordinated Claims – Class 6 Against Fitness and Backyard**...............................18
5.08.   **Interests in the Debtors – Class 7 Interests in Fitness and Backyard** ...................18

**ARTICLE VI MEANS FOR EXECUTION AND IMPLEMENTATION OF
THIS PLAN** .........................................................................................................18

6.01.   **Transfer of Assets; Assertion of Estate Actions, Defenses and Counterclaims**.........18
6.02.   **Financial Reporting to the Committee Designee**................................20
6.03.   **Officers and Directors of Reorganized Fitness** ..................................20
6.04.   **Dissolution of the Debtors** ....................................................................20
6.05.   **Wells Fargo Letter of Credit Facility** .................................................20
6.06.   **Restructuring Transactions** ..................................................................21
6.07.   **Working Capital Facility**.......................................................................21

**ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS** .......................21

7.01.   **General Treatment of Executory Contracts: Rejected**.................................21

i

**7.02.  Cure Payments** ........................................................................................21
**7.03.  Bar to Rejection Claims** ..............................................................................22
**7.04.  Rejection Claims** .......................................................................................22

**ARTICLE VIII CONDITIONS PRECEDENT TO EFFECTIVE DATE;**
**EFFECT OF PLAN CONFIRMATION**........................................................**22**

**8.01.  Conditions to Confirmation** ........................................................................22
**8.02.  Conditions Precedent to the Effective Date** ................................................22
**8.03.  Binding Effect** ...........................................................................................23
**8.04.  Discharge of Debtors**..................................................................................23
**8.05.  Release – As of the Effective Date** .............................................................23
**8.06.  Injunction**..................................................................................................24
**8.07.  Exculpation** ..............................................................................................24

**ARTICLE IX CLAIM OBJECTIONS AND DISTRIBUTIONS** ................................**24**

**9.01.  Objections to Claims; Objection Deadline** ..................................................24
**9.02.  Alternative Treatment** ...............................................................................25
**9.03.  Settlement of Claim Objections** .................................................................25
**9.04.  No Interest on Claims** ................................................................................26
**9.05.  Notices of Claims Under 11 U.S.C. § 506(b)** ..............................................26
**9.06.  Setoffs and No Waiver** ...............................................................................26
**9.07.  Procedures for Treating and Resolving Contested and Contingent Claims** ............27
**9.08.  Distributions Under the Plan** .....................................................................28
**9.09.  Duty to Disgorge Overpayments** ................................................................29

**ARTICLE X VOTING AND EFFECT OF REJECTION BY ONE OR**
**MORE CLASSES OF CLAIMS**..................................................................**29**

**10.01.  Impaired Classes to Vote**..........................................................................29
**10.02.  Acceptance by Classes** .............................................................................29
**10.03.  Section 1129(b) Cramdown** .......................................................................29

**ARTICLE XI RETENTION OF JURISDICTION** ..................................................**30**

**11.01.  Jurisdiction**.............................................................................................30
**11.02.  Examination of Claims**..............................................................................30
**11.03.  Determination of Disputes**.........................................................................30
**11.04.  Additional Purposes**.................................................................................30

**ARTICLE XII MISCELLANEOUS PROVISIONS** .................................................**32**

**12.01.  General Notices** .......................................................................................32
**12.02.  Termination of the Creditors Committee.**...................................................33
**12.03.  Asserting and Curing Default Under the Plan**.............................................33
**12.04.  Compliance with Tax Requirements**...........................................................33
**12.05.  Revocation or Withdrawal of the Plan**.......................................................33

**12.06. Modification of the Plan** .................................................................................34

**12.07. Due Authorization**.................................................................................................34

**12.08. Implementation** .....................................................................................................34

**12.09. Ratification** .............................................................................................................34

**12.10. Term of Injunctions or Stays** .............................................................................34

**12.11. Integration Clause**.................................................................................................35

**12.12. Interpretation** ........................................................................................................35

**12.13. Severability of Plan Provisions** ...........................................................................35

**12.14. Governing Law**.......................................................................................................35

**12.15. Exemption From Transfer Taxes** ........................................................................35

Keys Fitness Products, LP ("Fitness") and Keys Backyard, L.P. ("Backyard" and with Fitness, the "Debtors") file this Amended Joint Plan of Reorganization, as Modified (the "Plan") pursuant to section 1121(a) of the Bankruptcy Code.  Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties, results of operations, projections for future operations, risk factors, a summary and analysis of the Plan and certain related matters.

## ARTICLE I
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below.  A capitalized term used herein that is not defined in this Article or otherwise defined in the Plan shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan, provided that in the event of any conflict between the Plan and the Disclosure Statement, the Plan shall govern over the Disclosure Statement.  In the event a conflict between the Plan and any document implementing the Plan arises, the document shall govern.  In the event a conflict between the Plan and the Confirmation Order arises, the Confirmation Order shall govern.  Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa.  All exhibits and schedules attached to the Plan are incorporated herein.

**1.01.**  *"Administrative Claim"* means a Claim for payment of an administrative expense of a kind within the scope of section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) claims asserted under section 503(b)(9) of the Bankruptcy Code, (b) actual, necessary costs and expenses of preserving the Debtors' Estates and, as applicable, operating their businesses, including wages, salaries, or commissions for services rendered, (c) Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and (d) all fees and charges assessed against the Estate under the Bankruptcy Code or under chapter 123 of title 28 of the United States Code.

**1.02.**  *"Allowance Date"* means the date on which a Claim becomes an Allowed Claim.

**1.03.**  *"Allowed"* with respect to a Claim other than an Administrative Claim, or any portion thereof, means such a Claim (a) that has been allowed by a Final Order, (b) that was listed in the Schedules or any amendment thereof as neither disputed, contingent nor unliquidated and for which no timely proof of Claim was filed, (c) for which a proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Objection Deadline or within any other period fixed by the Bankruptcy Code or the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan; with respect to an Administrative Claim, means an Administrative Claim for which a timely request for payment has been made in accordance with the Plan that has been allowed by a Final Order of the Bankruptcy Court; and with respect to an

Interest, means any Interest that appears, as of the Voting Deadline, in the equity register or other similar records maintained by or on behalf of the Debtors.

**1.04.** *"Avoidance Action"* means any claim or cause of action arising under Chapter 5 of the Bankruptcy Code, including, but not limited to, 11 U.S.C. §§ 544, 545, 547, 548, 549, 553 and 550.

**1.05.** *"Bankruptcy Case"* means, as applicable, the Chapter 11 proceeding of Keys Fitness Products, LP, Case No. 08-31790, or the Chapter 11 proceeding of Keys Backyard, L.P., Case No. 08-30914, each of which is pending in the Bankruptcy Court.

**1.06.** *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

**1.07.** *"Bankruptcy Court"* means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over the Bankruptcy Cases.

**1.08.** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

**1.09.** *"Cash"* means legal tender of the United States of America and cash equivalents.

**1.10.** *"Claim"* shall have the meaning provided in section 101(5) of the Bankruptcy Code.

**1.11.** *"Collateral"* means any property or an interest in property of a Debtor's Estate that is subject to a valid and enforceable Lien or security interest to secure the payment or performance of a Claim, which Lien or security interest is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

**1.12.** *"Committee Designee"* means any party or parties designated in writing to the Debtors by the Creditors Committee before the Effective Date for the purpose of retaining and prosecuting any Insider Actions, as provided in section 6.01 of the Plan. The Committee Designee shall be a representative of each Estate for such purpose under section 1123(b)(3)(B) of the Bankruptcy Code.

**1.13.** *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.14.** *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1128, scheduled to commence on September 3, 2008, at 10:30 a.m. Central Time, and as may be continued from time to time.

**1.15.** ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.16.** ***"Contested,"*** with respect to a Claim, means a Claim against a Debtor (a) that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; (b) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (d) as to which an objection has been, or may be, timely filed and has not been overruled by a Final Order.  If an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.17.** ***"Creditors Committee"*** means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Cases by the United States Trustee pursuant to section 1102(a) of the Bankruptcy Code.

**1.18.** ***"Cure Claim"*** means a Claim arising from the assumption of an Executory Contract under section 365(b) of the Bankruptcy Code.

**1.19.** ***"Debtor"*** means, as applicable, Keys Fitness Products, LP or Keys Backyard, L.P.

**1.20.** ***"DIP Loan Claim"*** means any and all Allowed amounts owed (including interest, reasonable fees and expenses as permitted under the DIP Loan Facility and applicable law), as of the Effective Date, to JP Acquisition under the DIP Loan Facility, including Claims under all loan documents executed in connection therewith.

**1.21.** ***"DIP Loan Facility"*** means the post-petition DIP Loan Agreement (as defined in the DIP Loan Motion), if any, entered into by Fitness and JP Acquisition in accordance with the terms and conditions set forth in the DIP Loan Order.

**1.22.** ***"DIP Loan Motion"*** means the Debtor's Motion for Interim and Final Order (1) Approving Postpetition Financing With JP KFP Acquisition, LLC, (2) Authorizing Use of Cash Collateral, (3) Granting of Liens and Providing Superpriority Administrative Expense Status, (4) Granting of Adequate Protection, and (5) Scheduling a Final Hearing, filed on April 18, 2008 (docket #18).

**1.23.** ***"DIP Loan Order"*** means the Interim Order (1) Authorizing Postpetition Financing From JP KFP Acquisition, LLC, (2) Authorizing Use of Cash Collateral, (3) Granting of Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, and (6) Scheduling a Final Hearing, dated April 23, 2008 (docket #50), and a Final Order, if any, of the Bankruptcy Court granting the DIP Loan Motion and authorizing Fitness to enter into the DIP Loan Facility.

**1.24.** ***"Disclosure Statement"*** means the Disclosure Statement with respect to the Plan of Reorganization, as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

**1.25.** ***"Distribution"*** means the property required by the Plan to be distributed to the Holders of Allowed Claims and Interests.

**1.26.** ***"EBITDA"*** means, with respect to Reorganized Fitness, earnings before interest, taxes, depreciation, and amortization for the period from July 1, 2008 through June 30, 2011. The computation of EBITDA shall allow for an annual fee of $100,000 paid to JP Acquisition or its designee for the management of Reorganized Fitness for the period from July 1, 2008 through June 30, 2011.

**1.27.** ***"Effective Date"*** means the first Business Day on which no stay or motion for a stay of the Confirmation Order is in effect that is after ten (10) days (as calculated in accordance with Federal Rule of Bankruptcy Procedure 9006(a)) following the Confirmation Date and all conditions to the Effective Date have been met or waived.  Fitness will file and serve notice of the Effective Date within two (2) Business Days after its occurrence.

**1.28.** ***"Estate"*** means an applicable Debtor's estate in these cases created pursuant to section 541 of the Bankruptcy Code.

**1.29.** ***"Estate Action"*** means any cause of action, right, claim or demand against any Person that a Debtor or its Estate owns or has an interest in or can assert in any fashion, or that could be asserted by a Debtor on behalf of any creditor or creditor representative under the Bankruptcy Code as a Debtor in Possession, including but not limited to Avoidance Actions, actions under 11 U.S.C. § 510 to subordinate Claims, any cause of action, right, claim or demand against an Insider or an Affiliate of either of the Debtors, and any cause of action, right, claim or demand by a Debtor with respect to the quality or quantity of goods delivered to such Debtor before or after the Petition Date.

**1.30.** ***"Excess Earnings"*** means the aggregate amount of EBITDA of Reorganized Fitness, if any, that exceeds (a) the projected EBITDA set forth in Exhibit A attached to this Plan, and (b) annual expenses incurred by Reorganized Fitness for capital expenditures in the amount of $200,000 per year during the period from July 1, 2008 through June 30, 2011.

**1.31.** ***"Executory Contract"*** means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

**1.32.** ***"Fee Application"*** means an application for the allowance of a Fee Claim.

**1.33.** ***"Fee Claim"*** means a Claim by a Professional or any other party-in-interest pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code or otherwise relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.34.** *"Final Decree"* means a final decree entered by the Bankruptcy Court after the Effective Date and pursuant to Bankruptcy Rule 3022, which shall, among other things, close the Bankruptcy Cases.

**1.35.** *"Final Order"* means (a) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired, provided, however that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

**1.36.** *"General Unsecured Claim"* means an Unsecured Claim other than an Other Priority Claim or a Subordinated Claim.

**1.37.** *"Holder"* means a Person who is the beneficial owner of a Claim or Interest.  For purposes of a Distribution, a Person must be a Holder as of the Initial Distribution Date.  For purposes of voting to accept or reject the Plan, a Person must be a Holder as of the Voting Record Date.

**1.38.** *"Initial Distribution Date"* means, when used with respect to a particular Claim, the later of (a) the Effective Date, or (b) the Allowance Date.

**1.39.** *"Insider Action"* means an Estate Action against any Insider or Affiliate of a Debtor.

**1.40.** *"Interest"* means any "equity security" (as defined in section 101(16) of the Bankruptcy Code) in a Debtor.

**1.41.** *"JP Acquisition"* means JP KFP Acquisition, LLC.

**1.42.** *"JP Acquisition Secured Claim"* means a Secured Claim of JP Acquisition (inclusive of interest, fees and costs as permitted under the Prepetition Loan Documents and applicable law) against each of the Debtors, other than the DIP Loan Claim, that is secured by a perfected, first-priority security interest in or a Lien on all assets of the Estate, pursuant to the Prepetition Loan Documents.

**1.43.** *"Lien"* has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code and shall include a "statutory lien" as defined in section 101(53) of the Bankruptcy Code.

**1.44.** *"Objection Deadline"* means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective Holder(s) thereof as provided in section 9.01 of the Plan, which date shall be the Effective Date with respect to Claims filed on or before August 15, 2008 and a date fixed by order of the Bankruptcy Court, upon notice to the Committee Designee, with respect to Claims filed after August 15, 2008.

**1.45.** *"Other Priority Claim"* means a claim that if Allowed would be entitled to priority under section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

**1.46.** *"Other Secured Claim"* means any Secured Claim against a Debtor other than the DIP Loan Claim, a JP Acquisition Secured Claim, or a Secured Tax Claim.

**1.47.** *"Person"* means and includes natural persons, corporations, limited partnership, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

**1.48.** *"Petition Date"* means April 14, 2008 as to Fitness and February 28, 2008 as to Backyard.

**1.49.** *"Plan"* or *"Plan of Reorganization"* means this Debtors' Amended Joint Plan of Reorganization either in its present form or as it may hereafter be altered, amended or modified from time to time.

**1.50.** *"Prepetition Loan Documents"* means the Second Amended and Restated Loan Agreement and all related documents (including all UCC filings, other documents granting Liens and encumbrances and all forbearance agreements entered into by the Debtors with any of the lenders under the Prepetition Loan Documents, including JP Acquisition), dated August 19, 2005, providing for a credit facility up to $22,000,000, and executed by Fitness and Backyard as borrowers, and by Bank of America as lender.

**1.51.** *"Priority Tax Claim"* means any Claim against the Debtor that, if Allowed, would be entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**1.52.** *"Professional"* means a Person defined as a professional person in sections 327 or 1103 of the Bankruptcy Code who has been employed pursuant to an order of the Bankruptcy Court in a Bankruptcy Case and any professional seeking compensation or reimbursement of costs and expenses in connection a Bankruptcy Case pursuant to section 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

**1.53.** *"Pro Rata"* means, at any time, the proportion that the face amount of a Claim or an Interest in a particular Class bears to the aggregate face amount of all Claims or Interests in that Class.

**1.54.** *"Rejection Claim"* means a Claim by a party to an Executory Contract with the Debtor that has not been assumed by the Debtor pursuant to the Plan or a prior Final Order of the Bankruptcy Court entered in this case.

**1.55.** *"Reorganized Fitness"* means JP Acquisition or its designee  from and after the Effective Date.

**1.56.** *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended.

**1.57.** *"Secured Claim"* means a Claim secured by a Lien on or security interest in property of the Debtor, which Lien or security interest is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and is duly established in the Bankruptcy Case, but only to the extent of the value of the Collateral that secures payment of such Claim in accordance with 11 U.S.C. § 506 and taking into account any other Secured Claims with respect to such Collateral not inferior in priority to such Secured Claim or, in the event that such Claim is subject to setoff under 11 U.S.C. § 553, to the extent of such setoff.  Secured Claims shall include Claims secured by Liens or security interests junior in priority to existing security interests or Liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all Liens or security interests senior in priority

**1.58.** *"Secured Tax Claim"* means any Claim for ad valorem taxes that is based on or assessed against any real or personal property of the Debtor and is secured as of the Effective Date by a Lien or security interest against such property, which Lien or security interest is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the assets or property securing such Claim.

**1.59.** *"Subordinated Claim"* means a Claim (a) arising in connection with the sale or purchase of a security of the Debtor or an Affiliate of the Debtor, (b) arising from a rescission of a purchase or sale of a security of the Debtor or an Affiliate of the Debtor, (c) by an Insider or an Affiliate of the Debtor or by an entity of which the Debtor is an Insider or an Affiliate, including without limitation, (i) any Claim asserted by Tim Chen, Connie Chen and any trust on behalf of Tim Chen, Connie Chen, or any relative of either and (ii) any intercompany claim between Fitness and Backyard, (d) any claim filed by a creditor or assignee of Tim Chen, Connie Chen and any trust on behalf of Tim Chen, Connie Chen, or any relative of either, and whose claim is based upon a Debtor's alleged obligation to Tim Chen, Connie Chen, and any trust on behalf of Tim Chen, Connie Chen, or any relative of either, (e) otherwise subordinated pursuant to 11 U.S.C. § 510, or (f) based on fines or punitive damages.

**1.60.** *"Unclaimed Property"* means any Distribution under the Plan that, for a period of one year after the applicable Initial Distribution Date (unless otherwise extended by an order of the Bankruptcy Court or an agreement with Reorganized Fitness), is (a) attributable to the Holder of an Allowed Claim that failed to prepare, execute and return to Reorganized Fitness an Internal Revenue Service Form W-9, (b) returned to Reorganized Fitness as undeliverable, or (c) otherwise unclaimed.

**1.61.** *"Unsecured Claim"* means a Claim that is not a Secured Claim, a Secured Tax Claim, an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, or a Subordinated Claim, and shall include (a) any Claim arising from the rejection of an executory contracts or unexpired leases pursuant to 11 U.S.C. § 365 and (b) any Claim for subrogation arising from the payment, in whole or in part, of a Secured Claim or any other Claim against or obligation of the Debtor.

**1.62.** *"Voting Deadline"* means August 29, 2008 at 5:00 p.m. Central Time, the deadline set by the Bankruptcy Court for the receipt of Ballots for accepting or rejecting the Plan.

**1.63.** *"Voting Record Date means* August 1, 2008.

## ARTICLE II
## UNCLASSIFIED CLAIMS

**2.01.    Administrative Claims**.

All Administrative Claims shall be treated as follows:

**(a)    Time for Filing Administrative Claims.**

The Holder of any Administrative Claim that is incurred, accrued or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, (iii) a liability incurred and paid in the ordinary course of business by the Debtor, (iv) the DIP Loan Claim, or (v) a claim by JP Acquisition for adequate protection under the DIP Loan Order, must file with the Bankruptcy Court and serve on all parties required to receive such notice an application for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date; provided, that the deadline for Bank of America, N.A. ("BofA") to file a request for allowance of an Administrative Claim arising our of the prepetition Merchant Services Agreement between BofA and Fitness shall be 180 days after the Effective Date.  Such notice must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim.  Notwithstanding the foregoing, nothing in this Plan shall extend the deadline for filing claims arising under 11 U.S.C. § 503(b)(9) pursuant to the Order Approving Motion to Clarify Order Fixing Bar Date for Filing Proofs of Claim Filed Pursuant to 11 U.S.C. § 503(b)(9) (docket #135), which deadline was June 20, 2008.  Failure to timely and properly file and serve the application required under this subsection shall result in the Administrative Claim being forever barred and discharged.  Any party in interest, including Reorganized Fitness, may file an objection to an Administrative Claim filed pursuant to this subsection, but any objection must be filed within twenty (20) days after the date the Administrative Claim is served.

**(b)    Time for Filing Fee Claims.**

Each Professional who holds or asserts an Administrative Claim that is a Fee Claim for compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within thirty (30) days after the Effective Date.

Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged.  No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order or by consent of Reorganized Fitness.  Any party in interest, including Reorganized Fitness, may file an objection to a Fee Claim, but any objection must be filed within twenty (20) days after the date the Fee Application is served.  No hearing may be held until the twenty (20) day objection period has terminated.

>(c)     **Allowance of Administrative Claims.**

An Administrative Claim with respect to which notice has been properly filed pursuant to subparagraph 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed.  If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.  An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to subparagraph 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

>(d)     **Payment of Allowed Administrative Claims.**

Each Holder of an Allowed Administrative Claim shall be paid by Reorganized Fitness the amount of such Holder's Allowed Administrative Claim in Cash within thirty (30) days after such Claim is Allowed by a Final Order, or receive such other treatment as otherwise specified in the Plan or agreed upon in writing by Reorganized Fitness and such Holder; provided, however, that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business by the Debtor or Reorganized Fitness.  On the Effective Date, the Debtors shall transfer to a trust account maintained by the Debtors' counsel Cash in an amount sufficient to pay the Fee Claims reasonably estimated prior to the Effective Date by any Professional that intends to file a Fee Claim.  The Debtors' counsel shall hold such Cash in trust for the exclusive purpose of paying Allowed Fee Claims, and any excess funds remaining after all Fee Claims have been resolved by a Final Order of the Bankruptcy Court shall be transferred to and retained by Reorganized Fitness.  Each Allowed Fee Claim, after deducting any retainer, shall be paid from such trust fund maintained by the Debtors' counsel within five (5) Business Days after such Claim is Allowed by a Final Order.

>(e)     **DIP Loan Claim**

The DIP Loan Claim shall be paid by Reorganized Fitness in Cash in full on the Effective Date pursuant to the terms of the DIP Loan Facility and the DIP Loan Order.

>**2.02.   Priority Tax Claims.**

Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date, or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim, in full satisfaction, release and discharge of and exchange for such Clam, shall receive Cash from Reorganized Fitness equal to the Allowed amount of such Priority Tax Claim in equal quarterly installments commencing on March 1, 2009, with the final payment of the unpaid balance thereof to be made on March 1, 2011, together with interest thereon at the rate provided

through 11 U.S.C. § 511 from the Petition Date through the date such Claim is paid in full. Notwithstanding the foregoing, (a) any penalty arising with respect to or in connection with an Allowed Priority Tax Claim shall be treated as a Class 5 General Unsecured Claim against the applicable Debtor, and (b) Reorganized Fitness shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or prepayment penalty.

### 2.03.   U.S. Trustee Fees.

Reorganized Fitness shall be responsible for timely payment of United States Trustee quarterly fees incurred in the Bankruptcy Cases pursuant to 28 U.S.C. § 1930(a)(6).  Any fees due as of the most recent quarterly invoice prior to the Confirmation Date will be paid in full within thirty (30) days after the Effective Date.  After the Effective Date, Reorganized Fitness shall pay United States Trustee quarterly fees as they accrue until the Bankruptcy Cases are closed by the Bankruptcy Court.  Reorganized Fitness shall serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the Bankruptcy Cases remain open.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.01.   Classification

Sections 3.02 and 3.03 of the Plan set forth a designation of classes of Claims against and Interests in the Debtors in accordance with section 1122(a) of the Bankruptcy Code.  A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of the class and is classified in a different class to the extent the Claim or Interest qualifies within the description of that different class.  If a Claim is acquired or transferred, the Claim shall be placed in the class in which it would have been placed if it were owned by the original Holder of such Claim.

### 3.02.   Claims Against or Interests in Fitness

Class 1: Other Priority Claims

Class 2: Secured Tax Claims

Class 3: JP Acquisition Secured Claim

Class 4: Other Secured Claims

Class 5: Fitness General Unsecured Claims

Class 6: Subordinated Claims

Class 7: Interests

### 3.03.   Claims Against or Interests in Backyard

Class 1: Other Priority Claims

Class 2: Secured Tax Claims

Class 3: JP Acquisition Secured Claim

Class 4: Other Secured Claims

Class 5: Backyard General Unsecured Claims

Class 6: Subordinated Claims

Class 7: Interests

**ARTICLE IV**
**IDENTIFICATION OF UNIMPAIRED AND IMPAIRED
CLAIMS AND INTERESTS**

**4.01.    Unimpaired Claims**

Claims against the Debtors in Class 1 are not impaired under the Plan, and the Holders of those Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**4.02.    Impaired Claims**

Claims against Fitness and Backyard in Classes 2, 3, 4, and 5 are impaired under the Plan and the Holders of those Claims are entitled to vote to accept or reject the Plan.

The Holders of Claims against Fitness and Backyard in Class 6 will not receive or retain any property on account of such Claims, and such Holders are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**4.03.    Impaired Interests**

The Holders of Interests in Fitness and Backyard in Class 7 will not receive or retain any property on account of such Interests, and such Holders are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**4.04.    Controversy Concerning Impairment**

In the event of a controversy as to whether any Claim or Class of Claims is impaired under the Plan, the Bankruptcy Court will, after notice and a hearing, determine the controversy.

## <u>ARTICLE V</u>
## TREATMENT OF CLAIMS AND INTERESTS

### 5.01.    Other Priority Claims – Class 1 Claims Against Fitness and Backyard

**(a)**    **Impairment and Voting.**

Class 1 Other Priority Claims against Fitness and Class 1 Other Priority Claims against Backyard are not impaired under the Plan.  The Holders of Class 1 Claims against Fitness and Backyard are not entitled to vote to accept or reject the Plan.

**(b)**    **Treatment.** Except to the extent that a Holder of an Allowed Other Priority Claim has been paid before the Effective Date or agrees to a different treatment, each Holder of an Allowed Other Priority Claim against Fitness or Backyard, in full satisfaction, release and discharge of and exchange for such Claim, shall receive Cash from Reorganized Fitness in an amount equal to the Allowed amount of such Other Priority Claim within ten (10) days after the Initial Distribution Date.  The foregoing notwithstanding, to the extent the Allowed amount of an Other Priority Claim asserting priority treatment under 11 U.S.C. §§ 507(a)(4) and (5) exceeds the statutory cap applicable to such Claim, such excess shall be treated as a Class 5 General Unsecured Claim against Fitness or Backyard, as applicable.

### 5.02.    Secured Tax Claims – Class 2 Claims Against Fitness and Backyard

**(a)**    **Impairment and Voting.**

Class 2 Secured Tax Claims against Fitness and Class 2 Secured Tax Claims against Backyard are impaired under the Plan.  The Holders of Class 2 Claims against Fitness and Class 2 Claims against Backyard are entitled to vote to accept or reject the Plan.

**(b)**    **Treatment.**  With respect to any Allowed Secured Tax Claim for ad valorem property taxes for tax years prior to 2009, each Holder of such an Allowed Secured Tax Claim, in full satisfaction, release and discharge of and exchange for such Clam, shall receive Cash from Reorganized Fitness equal to the Allowed amount of such Secured Tax Claim in equal quarterly installments commencing on March 1, 2009, with the final payment of the unpaid balance thereof to be made on March 1, 2011, together with interest thereon at the rate provided through 11 U.S.C. § 511[1] from the Petition Date through the date such Claim is paid in full, or (ii) such other treatment as may be agreed upon in writing by the Debtor or Reorganized Fitness and such Holder.  Reorganized Fitness shall have the right to pay any Allowed Secured Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or penalty.

Notwithstanding any other provision of the Plan, each Holder of a Secured Tax Claim shall retain all liens, rights and remedies for payment thereof until its Allowed Secured Tax Claim is paid in full pursuant to the Plan; provided, however, that Reorganized Fitness may sell any Collateral subject to the Liens asserted by the Holder of an Allowed Secured Tax Claim and any such sale shall be free and clear of any such Liens with such Liens attaching to the proceeds

---

[1] With respect to Allowed Secured Tax Claims arising under Texas law, the interest rate applicable through 11 U.S.C. § 511 shall be one percent (1%) per month, or twelve percent (12%) per annum.

of the sale in the same priority that existed as of the Petition Date or, if later, the date when such Liens attached.

If Reorganized Fitness fails to timely pay any payment required under this section 5.02(b), the affected Holder of an Allowed Secured Tax Claim shall send written notice of default to Reorganized Fitness and its counsel. If the default is not cured within twenty (20) days after notice of default is mailed, such Holder may proceed with state law remedies for collection of all amounts due under state law without further order of the Bankruptcy Court.

### 5.03. JP Acquisition Secured Claim – Class 3 Claims Against Fitness and Backyard

#### (a) Allowance

The Class 3 JP Acquisition Secured Claim shall be allowed in the amount of $13,231,358.56 plus accrued but unpaid interest, fees, costs and expenses (as permitted under applicable law) provided for under the Prepetition Loan Documents.

#### (b) Impairment and Voting.

The Class 3 JP Acquisition Secured Claim against Fitness and the Class 3 JP Acquisition Secured Claim Backyard are impaired under the Plan. The Holder of the Class 3 Claim against Fitness and Backyard is entitled to vote to accept or reject the Plan.

#### (c) Treatment.

JP Acquisition (or its designee or assignee), as the Holder of the Class 3 JP Secured Claim against Fitness and the Class 3 JP Secured Claim against Backyard, shall receive, on the Effective Date, in full satisfaction, release and discharge of and exchange for such Claims and all related Liens securing such Claims, (i) all of the Debtors' Cash on hand, which shall be applied on the Effective Date to the Allowed JP Acquisition Claim, (ii) all assets of Fitness and Backyard, and (iii) a Cash payment from the Committee Designee equal to fifty percent (50%) of the net proceeds (excluding attorneys' fees and costs), if any, from any judgment or settlement of any Insider Action, as provided in section 6.01 of the Plan. In addition, on the Effective Date, the Debtors shall pay the reasonable fees and expenses (including attorneys' fees) of JP Acquisition incurred during the Bankruptcy Cases.

### 5.04. Other Secured Claims – Class 4 Claims Against Fitness and Backyard

#### (a) Impairment and Voting.

Class 4 Other Secured Claims against Fitness and Class 4 Other Secured Claims against Backyard are impaired under the Plan. The Holders of Class 4 Claims against Fitness and Class 4 Claims against Backyard are entitled to vote to accept or reject the Plan. Class 4 Claims against Fitness and Class 4 Claims against Backyard shall contain separate subclasses for each Other Secured Claim. Each subclass is deemed to be a separate class for all purposes under the Bankruptcy Code.

**(b)     Treatment.**

Each Holder of an Allowed Other Secured Claim has, or is deemed to have, an Allowed Other Secured Claim to the extent of the value of its interest in its Collateral or to the extent of its right of offset, as applicable.  The validity, extent, value, and priority of any Other Secured Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between Reorganized Fitness, and such Holder.  Each Holder of an Allowed Other Secured Claim, in full satisfaction, settlement, release and discharge of such Claim, shall receive, at Reorganized Fitness's option, (i) the return of the Collateral securing such Allowed Other Secured Claim on or as soon as practicable after the Initial Distribution Date; (ii) equal quarterly installment payments in Cash, over a period beginning with the Initial Distribution Date and ending on the third anniversary of the Petition Date, with such payments having a value, as of the Effective Date, equal to the lesser of (a) the value of such Collateral or (b) the full amount of the Allowed Other Secured Claim; or (iii) such other treatment as may be agreed to in writing by such Holder of the Allowed Other Secured Claim and Reorganized Fitness.  In the event that any such Allowed Other Secured Claim exceeds the value of the Collateral, any such excess (exclusive of any post-petition interest, fees or other charges Allowed by a Final Order as part of that Allowed Other Secured Claim) shall constitute a Class 5 General Unsecured Claim against Fitness or a Class 5 General Unsecured Claim against Backyard, unless the Holder of such Claim has elected treatment pursuant to section 1111(b) of the Bankruptcy Code and in accordance with Bankruptcy Rule 3014.

### 5.05.    General Unsecured Claims Against Fitness – Class 5

**(a)     Impairment and Voting.**

Class 5 General Unsecured Claims against Fitness are impaired under the Plan.  The Holders of Class 5 Claims against Fitness are entitled to vote to accept or reject the Plan.

**(b)     Treatment.**

Each Holder of an Allowed Class 5 General Unsecured Claim against Fitness shall receive, in full satisfaction, release, discharge, and exchange of such Allowed Claim:

(i)     a payment in Cash from Reorganized Fitness, payable no later than ten (10) days after the Initial Distribution Date, without interest, in an amount equal to two and one-half percent (2.5%) of the Allowed amount of such Claim; plus

(ii)     a payment in Cash from Reorganized Fitness, payable on March 2, 2009, without interest, in an amount equal to two and one-half percent (2.5%) of the Allowed amount of such Claim; plus

(iii)     a payment in Cash from Reorganized Fitness, payable on March 1, 2010, without interest, in an amount equal to five percent (5%) of the Allowed amount of such Claim; plus

(iv)     a payment in Cash from Reorganized Fitness on March 1, 2012 equal to a Pro Rata share of twenty percent (20%) of Excess Earnings, if any, up to but not

exceeding twelve percent (12%) of the Allowed amount of such Claim, with such payments, if any, being made on a *pari passu* basis with payments to Holders of Allowed Class 5 Claims against Backyard under section 5.06(b)(iii) of the Plan; provided that, if JP Acquisition or any of its affiliates receives a distribution from Reorganized Fitness (other than an annual management fee in the amount of $250,000) between the Effective Date and June 30, 2011, then no later than ten Business Days after any such distribution, Reorganized Fitness shall make a distribution under this section 5.05(b)(iv) equal to a Pro Rata share of twenty percent (20%) of Excess Earnings measured through the effective date of the distribution to JP Acquisition or any of its affiliates, up to but not exceeding twelve percent (12%) of the Allowed amount of such Claim, and in no event will the aggregate amount of all distributions under this section 5.05(b)(iv) exceed the lesser of (A) twelve percent (12%) of the Allowed Class 5 Claims against Fitness and (B) $1,020,000.

As a condition for a Holder of a Class 5 Claim against Fitness that has an ongoing business relationship with Reorganized Fitness after the Effective Date ("Ongoing Vendor")[2] to receive a distribution under this subsection 5.05(b)(iv), such Holder must agree to payment terms with Reorganized Fitness that provide for (A) payment within sixty (60) days with a letter of credit posted at shipment by Reorganized Fitness during the one-year period after the Effective Date and (B) payment within sixty (60) days without the requirement for the posting of a letter of credit or other credit support by Reorganized Fitness from and after the first anniversary of the Effective Date.  If an Ongoing Vendor does not agree to the payment terms stated in the preceding sentence, by so indicating on its ballot for voting on the Plan (or otherwise affirming its agreement to Fitness before the Effective Date) and by reaffirming such agreement in writing to Reorganized Fitness on or before the first anniversary of the Effective Date, then such Ongoing Vendor shall waive its right to receive its Pro Rata share of Excess Earnings and such amount shall be retained by Reorganized Fitness; plus

(v)    a payment in Cash from the Committee Designee equal to a Pro Rata share of the Committee Designee's share of the net proceeds (excluding attorneys' fees and costs), if any, of any judgment or settlement of any Insider Action, as provided in section 6.01 of the Plan, with such payments, if any, being made on a *pari passu* basis with payments to Holders of Allowed Class 5 Claims against Backyard under section 5.06(b)(iv) of the Plan.

The aggregate amount of the payments under subsections 5.05(b)(i)-(iii) shall not exceed $900,000, and the aggregate amount of the payments, if any, under subsection 5.05(b)(iv) shall not exceed $1,020,000.  If the aggregate payment amounts resulting from applying the respective percentage payments set forth in subsections 5.05(b)(i)-(iii) or subsection 5.05(b)(iv), respectively, to the aggregate amount of all Allowed Class 5 General Unsecured Claims against Fitness would exceed the foregoing aggregate maximum payments, then each Holder of an Allowed Class 5 Claim against Fitness shall receive a Pro Rata portion of such maximums (i.e., $900,000 and $1,020,000).

---

[2] A list of the parties whom Fitness believes will be Ongoing Vendors is attached as Exhibit B to the Plan.

If Reorganized Fitness sells all or substantially all of its assets or if JP Acquisition or its designee or assignee sells a controlling interest in Reorganized Fitness on or before the due date of any payment prescribed under subsections 5.05(b)(i)-(iii) of the Plan, then Reorganized Fitness shall pay any amounts that are or would become payable under those subsections within thirty (30) days after the closing of any such sale.

If Reorganized Fitness sells all or substantially all of its assets or if JP Acquisition or its designee or assignee sells a controlling interest in Reorganized Fitness on or before June 30, 2011, then the amount of the payment, if any, that would otherwise be due and payable on March 1, 2012 under subsection 5.05(b)(iv) of the Plan shall be determined by calculating the amount of Excess Earnings, if any, as of the date of the closing of any such sale, and Reorganized Fitness shall pay such amount, if any, within thirty (30) days after any such closing.

(c)    <b>Waiver of General Unsecured Claims by JP Acquisition.</b>

If the Creditors Committee supports confirmation of the Plan, then JP Acquisition shall waive, or be deemed to have waived, any Distribution it otherwise would receive on account of any Class 5 General Unsecured Claim JP Acquisition has or may have against Fitness that could arise under section 506 of the Bankruptcy Code or otherwise.  In such event, JP Acquisition shall not receive any Distribution on account of any Class 5 Claim it has or may have against Fitness, and any such Distribution shall be distributed on a Pro Rata basis to Holders of Allowed Class 5 Claims against Fitness who are not, and never have been, Insiders or Affiliates of Fitness.

If the Creditors Committee does not support confirmation of the Plan, then JP Acquisition shall not waive its Class 5 General Unsecured Claim against Fitness and shall be entitled to a Pro Rata Distribution on account of such Claim.

### 5.06.    General Unsecured Claims Against Backyard – Class 5

(a)    <b>Impairment and Voting.</b>

Class 5 General Unsecured Claims against Backyard are impaired under the Plan.  The Holders of Class 5 Claims against Backyard are entitled to vote to accept or reject the Plan.

(b)    <b>Treatment.</b>

Each Holder of an Allowed Claim within such Class shall receive, in full satisfaction, release, discharge, and exchange of such Allowed Claim:

(i)    a payment in Cash from Reorganized Fitness, payable no later than ten (10) days after the Initial Distribution Date, without interest, in an amount equal to two and one-half percent (2.5%) of the Allowed amount of such Claim; plus

(ii)    a payment in Cash from Reorganized Fitness, payable on March 2, 2009, without interest, in an amount equal to two and one-half percent (2.5%) of the Allowed amount of such Claim; plus

(iii)    a payment in Cash from Reorganized Fitness on March 1, 2012 equal to a Pro Rata share of twenty percent (20%) of Excess Earnings, if any, up to but not exceeding six percent (6%) of the Allowed amount of such Claim, with such payments, if any, being made on a *pari passu* basis with payments to Holders of Allowed Class 5 Claims against Fitness under section 5.05(b)(iv) of the Plan; provided that, if JP Acquisition or any of its affiliates receives a distribution from Reorganized Fitness (other than an annual management fee in the amount of $250,000) between the Effective Date and June 30, 2011, then no later than ten Business Days after any such distribution, Reorganized Fitness shall make a distribution under this section 5.06(b)(iii) equal to a Pro Rata share of twenty percent (20%) of Excess Earnings measured through the effective date of the distribution to JP Acquisition or any of its affiliates, up to but not exceeding six percent (6%) of the Allowed amount of such Claim, and in no event will the aggregate amount of all distributions under this section 5.06(b)(iii) exceed the lesser of (A) six percent (6%) of the Allowed Class 5 Claims against Backyard and (B) $267,000; plus

(iv)    a payment in Cash from the Committee Designee equal to a Pro Rata share of the Committee Designee's share of the net proceeds (excluding attorneys' fees and costs), if any, of any judgment or settlement of any Insider Action, as provided in section 6.01 of the Plan, with such payments, if any, being made on a *pari passu* basis with payments to Holders of Allowed Class 5 Claims against Fitness under section 5.05(b)(v) of the Plan.

The aggregate amount of the payments under subsections 5.06(b)(i)-(ii) shall not exceed $225,000, and the aggregate amount of the payments, if any, under subsection 5.06(b)(ii) shall not exceed $267,000.  If the aggregate payment amounts resulting from applying the respective percentage payments set forth in subsections 5.06(b)(i)-(ii) or subsection 5.06(b)(iii), respectively, to the aggregate amount of all Allowed Class 5 General Unsecured Claims against Backyard would exceed the foregoing aggregate maximum payments, then each Holder of an Allowed Class 5 Claim against Backyard shall receive a Pro Rata portion of such maximums (i.e., $225,000 and $267,000).

If Reorganized Fitness sells all or substantially all of its assets or if JP Acquisition or its designee or assignee sells a controlling interest in Reorganized Fitness on or before the due date of any payment prescribed under subsections 5.06(b)(i)-(ii) of the Plan, then Reorganized Fitness shall pay any amounts that are or would become payable under those subsections within thirty (30) days after the closing of any such sale.

If Reorganized Fitness sells all or substantially all of its assets or if JP Acquisition or its designee or assignee sells a controlling interest in Reorganized Fitness on or before June 30, 2011, then the amount of the payment, if any, that would otherwise be due and payable on March 1, 2012 under subsection 5.06(b)(iii) of the Plan shall be determined by calculating the amount of Excess Earnings, if any, as of the date of the closing of any such sale, and Reorganized Fitness shall pay such amount, if any, within thirty (30) days after any such closing.

(c)      **Waiver of General Unsecured Claims by JP Acquisition.**

If the Creditors Committee supports confirmation of the Plan, then JP Acquisition shall waive, or be deemed to have waived, any Distribution it otherwise would receive on account of any Class 5 General Unsecured Claim JP Acquisition has or may have against Backyard could arise under section 506 of the Bankruptcy Code or otherwise.  In such event, JP Acquisition shall not receive any Distribution on account of any Class 5 Claim it has or may have against Backyard, and any such Distribution shall be distributed on a Pro Rata basis to Holders of Allowed Class 5 Claims against Backyard who are not, and never have been, Insiders or Affiliates of Backyard.

If the Creditors Committee does not support confirmation of the Plan, then JP Acquisition shall not waive its Class 5 General Unsecured Claim against Backyard and shall be entitled to a Pro Rata Distribution on account of such Claim.

### 5.07.   Subordinated Claims – Class 6 Against Fitness and Backyard

(a)      **Impairment and Voting.**

Class 6 Claims against Fitness and Class 6 Claims against Backyard are impaired under the Plan.  However, the Holders of such Claims will not receive or retain any property on account of such Claims.  Thus, such Holders are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

(b)      **Treatment.**

The Holders of Class 6 Subordinated Claims against Fitness and Class 6 Subordinated Claims against Backyard will not receive or retain any property on account of such Claims.

### 5.08.   Interests in the Debtors – Class 7 Interests in Fitness and Backyard

(a)      **Impairment and Voting.**

Class 7 Interests in Fitness and Class 7 Interests in Backyard are impaired under the Plan. Each Holder of a Class 7 Interest in Fitness or a Class 7 Interest in Backyard is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(b)      **Treatment**.

As of the Effective Date, all Interests in Fitness and all Interests in Backyard will be extinguished, and the Holders of such Interests will not receive or retain any property on account of such Interests.

## <u>ARTICLE VI</u>
### MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

### 6.01.   Transfer of Assets; Assertion of Estate Actions, Defenses and Counterclaims

On the Effective Date, all property and assets (tangible or intangible) of the Debtors and their Estates shall be transferred to and vest in Reorganized Fitness free and clear of all Claims,

Liens and encumbrances, except as otherwise provided in the Plan; provided, however, that on the Effective Date, Cash in the amounts of $225,000 and $112,500 required to pay the initial distributions to Holders of Class 5 Claims (including all Allowed Claims and Contested Claims that become Allowed Claims in such Classes) against Fitness and Backyard, respectively, pursuant to sections 5.05(b)(i) and 5.06(b)(i) of the Plan shall be transferred to counsel for the Debtors, to be held in trust for the exclusive purpose of paying such Claims as they become Allowed Claims, and any excess funds remaining after all objections to Contested Claims in such Classes have been resolved by a Final Order of the Bankruptcy Court shall be transferred to and retained by Reorganized Fitness.    Further, Reorganized Fitness shall transfer Cash in the amounts of (a) $225,000 and $112,500 on February 23, 2009, and (b) $450,000 on February 22, 2010 to counsel for the Debtors, to be held in trust for the exclusive purpose of paying Distributions to Holders of Class 5 Claims (including all Allowed Claims and Contested Claims that become Allowed Claims in such Classes) against Fitness and Backyard, respectively, pursuant to sections 5.05(b)(ii)-(iii) and 5.06(b)(ii) of the Plan as they become Allowed Claims, and any excess funds remaining after all objections to Contested Claims in such Classes have been resolved by a Final Order of the Bankruptcy Court shall be transferred to and retained by Reorganized Fitness

Without limiting the foregoing, in accordance with section 1123(b)(3) of the Bankruptcy Code, each Debtor shall transfer all of its Estate Actions, claims, counterclaims, rights, defenses, setoffs, recoupments, and actions in law or equity to Reorganized Fitness as of the Effective Date.    Reorganized Fitness shall retain the exclusive right to assert, prosecute, settle, or compromise any Estate Action transferred to it under the Plan (except for Insider Actions, which shall be within the purview of the Committee Designee as set forth in the following paragraph); provided, that except as provided in Section 8.05(c) of the Plan, Reorganized Fitness shall not initiate or prosecute any Avoidance Action against any party that is the holder of a General Unsecured Claim.

Notwithstanding the foregoing, on the Effective Date, the Debtors shall transfer all Insider Actions to the Committee Designee, which shall be a representative of each Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Committee Designee shall have and retain the exclusive right to assert, prosecute, settle, or compromise, at its own cost and without any expense to Reorganized Fitness, any Insider Action.  The Committee may decide, in its reasonable discretion, whether to pursue or not pursue any Insider Action without approval of the Bankruptcy Court approval or notice to any party.  The Committee Designee may charge a reasonable hourly rate and may retain counsel or other professionals, and pay ordinary course expenses, without further order of the Bankruptcy Court or notice to any party; provided, that the obligation of Reorganized Fitness to reimburse the Committee Designee for the fees and expenses of the Committee Designee and its counsel and other professionals shall not exceed the annual limits specified in section 6.02 of the Plan.  The first $500,000 of any proceeds of any Insider Action, net of any fees and costs incurred by the Committee Designee in the prosecution, settlement, and/or collection of same, shall be payable to the Committee Designee.  Any remaining net proceeds shall be divided as follows:  sixty percent (60%) to the Committee Designee, and forty percent (40%) to Reorganized Fitness.  The Committee shall distribute all net proceeds of any Insider Action that it receives under this paragraph to all Holders of Allowed Class 5 Claims against the Debtors on a Pro Rata basis, pursuant to sections 5.05(b)(v) and 5.06(b)(iv) of the Plan.

Reorganized Fitness shall also retain and may prosecute and enforce all defenses, counterclaims, and rights that have been asserted or could be asserted by a Debtor against or with respect to all Claims asserted against such Debtor or property of such Debtor's Estate. No claim, right, Estate Action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Debtor's Schedules or the Disclosure Statement accompanying the Plan. From and after the Effective Date, Reorganized Fitness shall be authorized to operate its business and use, acquire and dispose of its assets free of any restrictions of the Bankruptcy Code, but in accordance with the Plan.

### 6.02.    Financial Reporting to the Committee Designee

Reorganized Fitness shall provide a copy of its annual audited financial statements and its quarterly unaudited financial statements to the Committee Designee within sixty (60) days after the end of the foregoing relevant reporting period. This obligation shall terminate upon the earlier of (a) the financial reporting period ending June 30, 2011, and (b) the distribution of all payments, if any, that become payable under sections 5.05(b)(iv) and 5.06(b)(iii) of the Plan. Within ten (10) Business Days after the Effective Date, Reorganized Fitness shall pay the Committee Designee the sum of $10,000 for its fees and expenses for (a) monitoring the initial Distributions to Class 5 Claimants under sections 5.05(b)(i) and 5.06(b)(i) of the Plan; (b) reviewing and analyzing the financial performance of Reorganized Fitness (including, without limitation, the financial statements provided under this section 6.02 of the Plan); and (c) otherwise fulfilling the Committee Designee's duties under the Plan, during the first year following the Effective Date. The Committee Designee may seek reimbursement from Reorganized Fitness for additional fees and expenses, upon request supported by reasonable documentation, for an additional $5,000 during the first year following the Effective Date (if the Committee Designee demonstrates that the initial $10,000 provided by Reorganized Fitness for this period has been consumed) and up to $10,000 during each of the second and third years following the Effective Date.

### 6.03.    Officers and Directors of Reorganized Fitness

On the Effective Date, the existing officers of the Debtors shall be deemed removed from office pursuant to the operation of the Confirmation Order. The officers of Reorganized Fitness as of the Effective Date shall be Miguel Nistal, as President and Chief Executive Officer, and any other persons identified by the Debtors prior to the Confirmation Hearing. The directors of Reorganized Fitness as of the Effective Date shall be Steven C. Jaffe, Miguel Nistal, and Charles W. Moore or such other designees that JP Acquisition may identify in a schedule filed not later than ten (10) days prior to the Confirmation Hearing..

### 6.04.    Dissolution of the Debtors

The Confirmation Order shall provide for the dissolution of the Debtors, effective as of the Effective Date, for all purposes without the necessity for any other or further action to be taken by or on behalf of the Debtors. Notwithstanding the foregoing, Reorganized Fitness may cause each of the Debtors to be dissolved in accordance with applicable law.

### 6.05.    Wells Fargo Letter of Credit Facility

On the Effective Date, all outstanding letters of credit issued under and in accordance with the Wells Fargo Bank, N.A. Letter of Credit Facility shall be either (i) replaced by a letter

of credit issued under and in accordance with an exit facility to be entered into by Reorganized Fitness or (ii) cash collateralized by an amount equal to 110% of the aggregate undrawn amount of all such letters of credit.

### 6.06.   Restructuring Transactions

On or after the Effective Date, and in the sole discretion of Reorganized Fitness, Reorganized Fitness may implement certain transactions affecting its corporate structure to facilitate the transfer of the Debtors' assets to Reorganized Fitness or its designee in accordance with non-bankruptcy law, provided that no such transaction shall have a materially adverse effect on Distributions to Holders of Allowed Claims under the Plan.

### 6.07.   Working Capital Facility

On the Effective Date, Reorganized Fitness shall enter into a working capital facility, and other documents or agreements related thereto, on terms and conditions acceptable to JP Acquisition.

## <u>ARTICLE VII</u>
## TREATMENT OF EXECUTORY CONTRACTS

### 7.01.   General Treatment of Executory Contracts: Rejected

The Plan constitutes and incorporates a motion by the Debtors to reject, as of the Effective Date, all Executory Contracts to which either Debtor is a party, except for Executory Contracts that (a) have been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (b) are the subject of a separate motion pursuant to section 365 of the Bankruptcy Code to be filed and served by the applicable Debtor on or before the Confirmation Date or (c) is specifically designated as a contract or lease to be assumed on a schedule filed by the Debtors no later than fifteen (15) days prior to the Confirmation Hearing.  The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the rejection or assumption, as applicable, of such Executory Contracts as of the Effective Date.

### 7.02.   Cure Payments

All Allowed Cure Claims that may be required by section 365(b)(1) of the Bankruptcy Code under any Executory Contract that is assumed pursuant to a Final Order (which may be the Confirmation Order) of the Bankruptcy Court shall be paid by Reorganized Fitness on the later of sixty (60) days after the Effective Date or five (5) Business Days after the order of the Bankruptcy Court allowing such Cure Claim becomes a Final Order.  Notwithstanding the foregoing, Reorganized Fitness may, in its sole discretion, file a motion to reject any Executory Contract as to which a Cure Claim is established by an order of the Bankruptcy Court, and any such motion shall be filed no later than five (5) Business Days after the order of the Bankruptcy Court allowing such Cure Claim becomes a Final Order.  If such rejection results in damages to the other party or parties to such Executory Contract, a Claim for such damages shall be forever barred and shall not be enforceable against Reorganized Fitness or its properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon Reorganized Fitness within thirty (30) days after the entry of an order approving the rejection of such Executory Contract.

### 7.03.   Bar to Rejection Claims

Except as provided in section 7.02 of the Plan, if the rejection of an Executory Contract results in damages to the other party or parties to such Executory Contract, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors, Reorganized Fitness or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon Reorganized Fitness by the earlier of (a) thirty (30) days after the Effective Date or (b) such other deadline as the Bankruptcy Court may set for asserting a Claim for such damages.

### 7.04.   Rejection Claims

Any Rejection Claim arising from the rejection of an Executory Contract shall be treated as a Class 5 General Unsecured Claim against Fitness or a Class 5 General Unsecured Claim against Backyard, as applicable, pursuant to the Plan, except as limited by the provisions of sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code and mitigation requirements under applicable law.   Nothing contained herein shall be deemed an admission by the Debtors, Reorganized Fitness, or any other party in interest that such rejection gives rise to or results in a Rejection Claim or shall be deemed a waiver by the Debtors, Reorganized Fitness, or any other party in interest of any objections to such Rejection Claim if asserted.

### ARTICLE VIII
### CONDITIONS PRECEDENT TO EFFECTIVE DATE;
### EFFECT OF PLAN CONFIRMATION

### 8.01.   Conditions to Confirmation

The Confirmation Order shall have been entered in form and substance reasonably acceptable to JP Acquisition.

### 8.02.   Conditions Precedent to the Effective Date

The occurrence of the Effective Date of the Plan is subject to the occurrence of the following conditions precedent:

**(a)**     All documents effectuating the Plan and the transactions thereunder (which shall be in form and substance reasonably acceptable to JP Acquisition) shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein;

**(b)**     The Confirmation Order shall have become a Final Order and shall authorize and direct the Debtors and Reorganized Fitness to take all actions necessary or appropriate to implement and consummate the provisions of, and transactions described or contemplated in, the Plan; and

**(c)**     Reorganized Fitness shall have entered into an exit financing facility on terms and conditions acceptable to JP Acquisition.

The foregoing conditions to the Effective Date of the Plan may be waived in whole or in part by the Debtors and JP Acquisition without notice, an order of the Bankruptcy Court, or any further action.

### 8.03.    Binding Effect

This Plan shall be binding upon and inure to the benefit of the Debtors, Reorganized Fitness, all present and future Holders of Claims and Interests, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Cases.

### 8.04.    Discharge of Debtors

### [Intentionally left blank]

### 8.05.    Release – As of the Effective Date

(a)    *The Debtors and any successors-in-interest of the Debtors shall release, waive and discharge JP Acquisition, its affiliates, officers, directors, employees, agents and advisors from any and all claims, debts, obligations, rights, suits, damages, actions, Estate Actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of immediately before the Effective Date or thereafter arising, at law, in equity, or otherwise, that any of the Debtors would have been legally entitled to assert in its own right (whether individually or collectively) or that any Holder of a Claim or other Person or entity would have been legally entitled to assert on behalf of any of the Debtors or any of their Estates, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place immediately before or on the Effective Date, except for acts constituting willful misconduct or gross negligence as determined by a Final Order.*

(b)    *As of the Effective Date, to the fullest extent permitted by law, each Holder of a Claim or Interest shall, in consideration for the obligations of the Debtors and Reorganized Fitness under the Plan and the Cash, contracts, instruments, releases and other agreements or documents to be delivered in connection with the Plan, be deemed to have forever released, waived and discharged JP Acquisition, its affiliates, officers, directors, employees, agents and advisors from all claims, demands, debts, rights, causes of action or liabilities (other than (x) the right to enforce the Debtors' or the Reorganized Fitness' obligations under the Plan, and the contracts, instruments, release, agreements and documents delivered, reinstated or assumed under the Plan, and (y) any claims or causes of action arising out of willful misconduct or gross negligence as determined by a Final Order), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors, Reorganized Fitness, the Bankruptcy Cases, the Plan, the Confirmation Order or the Disclosure Statement, in each case at any time up to immediately prior to the Effective Date.*

(c)    *As of the Effective Date, all Avoidance Actions against all Entities (other than Insiders or Affiliates of the Debtors) shall be released.*

### 8.06.    Injunction

Except as otherwise provided in the Plan or the Confirmation Order, from and after the Confirmation Date, all Holders of Claims against and Interests in the Debtors that are discharged pursuant to the Plan or the Bankruptcy Code are permanently restrained and enjoined from taking any of the following actions against the Debtors, the Estates, JP Acquisition, or Reorganized Fitness or any of their property on account of any such discharged Claim or Interest:  (a) commencing or continuing in any manner any action or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien of any kind; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors or their assets or any of the Debtors' assets that are transferred to Reorganized Fitness under this Plan; and (e) performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each Holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all Holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.  The foregoing injunction shall extend to Reorganized Fitness, JP Acquisition, their respective affiliates, officers, directors, employees, agents and advisors, and their respective property and interests in property.  If allowed by the Bankruptcy Court, any entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

### 8.07.    Exculpation

The Debtors and their officers and Professionals, the members of the Creditors Committee, the Creditors Committee's Professionals, and JP Acquisition, its affiliates, officers, directors, employees, agents and advisors shall not have or incur any liability to any Holder of a Claim or Interest or any other entity for any act or omission in connection with, or arising out of, the administration of the Bankruptcy Cases, the operation of the Debtors' business during the Bankruptcy Cases, the formulation, preparation, dissemination, approval, or confirmation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, except for willful misconduct or gross negligence.  The foregoing parties will be entitled to rely upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.

## <u>ARTICLE IX</u>
## CLAIM OBJECTIONS AND DISTRIBUTIONS

### 9.01.    Objections to Claims; Objection Deadline

Any party in interest, including the Debtors, may make and file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan).  Except as set forth in sections 2.01 (b) and 2.01(c) of the Plan or as otherwise ordered by the Bankruptcy Court, the deadline for filing objections to Claims shall be no later than the Effective Date with respect to Claims filed on or before August 15, 2008 and a date fixed by order of the Bankruptcy Court, upon notice to the Committee Designee, with respect to Claims filed after August 15, 2008.  An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods:  (a) in accordance with Federal Rule of

Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Claimant is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the Claimant in the Bankruptcy Case.

After the Effective Date, Reorganized Fitness shall diligently prosecute, at its own cost, any objections to Claims filed by either of the Debtors before the Effective Date or thereafter if permitted by an order of the Bankruptcy Court.

### 9.02.   Alternative Treatment

Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the Distribution or treatment to which it is entitled hereunder, any other Distribution or treatment to which it and Reorganized Fitness may agree in writing, so long as such alternative treatment is substantially the same as or less favorable than the treatment otherwise prescribed for such Holder by the Plan.

### 9.03.   Settlement of Claim Objections

From and after the Effective Date, pursuant to Bankruptcy Rule 9019(b) and section 105(a) of the Bankruptcy Code, Reorganized Fitness shall be entitled to compromise and settle its objections to Contested Claims subject to the limitations set forth in the Plan, in accordance with the following procedures, which will constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements of claims:

- If the face amount of the Contested Claim is less than $50,000, Reorganized Fitness will be authorized and empowered to settle the objection to such Contested Claim and execute the necessary documents, including a stipulation of settlement or release, without notice to any party.

- If the face amount of the Contested Claim is greater than $50,000, Reorganized Fitness shall file a notice of such proposed settlement with the Bankruptcy Court, and Reorganized Fitness will be authorized and empowered to settle its objection to such Contested Claim, and execute the necessary documents, including a stipulation of settlement or release, without further notice or approval of the Bankruptcy Court if no objection to such settlement is filed with the Bankruptcy Court within fourteen (14) days after Reorganized Fitness files such notice with the Bankruptcy Court.

If any party objects to the proposed settlement of a Contested Claim within the foregoing 14-day period, then (a) if all objecting parties withdraw, for any reason, their objections to such settlement, Reorganized Fitness may enter into the proposed settlement without further notice, and without the necessity of a motion, hearing or order of the Bankruptcy Court, or (ii) if all objecting parties do not withdraw their objections, Reorganized Fitness will have the option of:

- Forgoing entry into the settlement agreement that is the subject of an objection,

- Modifying the terms of the settlement agreement in a way that results in the withdrawal of all objections, or

- Seeking an order of the Bankruptcy Court in the ordinary course authorizing Reorganized Fitness to enter into the settlement agreement over any pending objections.

### 9.04.   No Interest on Claims

Unless otherwise specifically provided for in the Plan, the Confirmation Order or the Bankruptcy Code (including section 506(b) of the Bankruptcy Code), post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Contested Claim for the period from the Effective Date to the date a final Distribution is made when and if such Contested Claim becomes an Allowed Claim.

### 9.05.   Notices of Claims Under 11 U.S.C. § 506(b)

If the Holder of a Secured Claim (other than Dallas County or the Holder of the JP Acquisition Secured Claim) believes it is entitled to interest, reasonable fees, costs or charges in accordance with section 506(b) of the Bankruptcy Code, such Claimant must file with the Court a Notice of Claim Under 506(b) and serve such Notice on Reorganized Fitness no later than thirty (30) days after the Effective Date.  The Notice of Claim Under 506(b) must include (a) copies of the agreement(s) under which the claim for interest, reasonable fees, costs or charges arose; (b) a complete calculation of the amount of interest, reasonable fees and costs due including the applicable interest rate and (c) any other supporting documentation including, but not limited to, invoices evidencing attorneys fees.  Any Holder of a Secured Claim (other than Dallas County or the Holder of the JP Acquisition Secured Claim) that does not file a Notice of Claim Under 506(b) (or does not amend its original proof of Claim by the foregoing deadline to include Claims under 506(b), to the extent such amendment is permitted under the Bankruptcy Code and the Bankruptcy Rules) and attach documents of the type described in the preceding sentence shall be forever barred from asserting such Claims against Reorganized Fitness or its successors or assignees, or any of their respective properties; and such Claims will be deemed discharged as of the Effective Date.

Any party may file an objection to any Notice of Claim Under 506(b).  Any such objection must be filed within sixty (60) days from the Effective Date and must be served on the party that filed the subject Notice of Claim Under 506(b) and Reorganized Fitness.

### 9.06.   Setoffs and No Waiver

Reorganized Fitness may, but shall not be required to, set off against any Claim or any payment or Distribution to be made on account thereof pursuant to the Plan (before any Distribution is made) any claim, right or cause of action of any nature that the Debtors or Reorganized Fitness may hold against the Holder of such Claim.  Such setoffs shall not be subject to the requirements or restrictions of Bankruptcy Code section 553 concerning mutuality or when the respective items subject to setoff under this section 9.06 arose, but shall be subject to the defenses and rights of the non-Debtor party.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or

Reorganized Fitness of any such claims, rights or causes of action that the Debtors or Reorganized Fitness may have against such Holder.  The Holder of a Contested Claim who asserts a right of setoff will retain the right, subject to any defenses of the Debtors or Reorganized Fitness until the earlier of the time when (a) the Contested Claim becomes Allowed, in whole or in part, or (b) the Claim is disallowed by a Final Order of the Bankruptcy Court.

### 9.07.   Procedures for Treating and Resolving Contested and Contingent Claims

**(a)   No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, Reorganized Fitness shall make Distributions only to Holders of Allowed Claims.  No Holder of a Contested Claim will receive any Distribution on account thereof until and to the extent that its Contested Claim becomes an Allowed Claim.  If necessary in determining the amount of a Pro Rata Distribution due to the Holders of Allowed Claims, Reorganized Fitness shall make the Pro Rata calculation as if all Contested Claims were Allowed Claims in the full amount claimed or in the amount estimated under section 9.07(b) hereof. Reorganized Fitness in its sole discretion, may withhold Distributions otherwise due hereunder to the Holder of a Claim until the Objection Deadline, to enable Reorganized Fitness to file a timely objection thereto.  When a Contested Claim becomes an Allowed Claim, Reorganized Fitness shall make Distributions with respect to such Allowed Claim, without interest (except as otherwise provided by the Plan), net of any setoff and/or any required withholding of applicable taxes.

**(b)   Claim Estimation.**  The Debtor or Reorganized Fitness may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the Bankruptcy Court will determine (i) whether such Contested Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Contested Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Reorganized Fitness may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**(c)   Distributions After Allowance of Contested Claim.**  Distributions to each respective Holder of a Contested Claim, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims in the Class in which such Claimant is classified.  Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Contested Claim becomes an Allowed Claim, and in any event not later than ten (10) Business Days after the Contested Claim becomes

an Allowed Claim, Reorganized Fitness will distribute to the Claimant any Distribution that would have been made to such Claimant had its Claim been an Allowed Claim on the date that Distributions were previously made to Holders of Allowed Claims in the Class in which such Claimant is classified under the Plan, including interest, if any, that accrues on such claim in the interim period while the Claim is Contested.  After all Contested Claims have been resolved and all such Claims that become Allowed Claims have been paid the full amount provided under the Plan, any remaining property in the trust account maintained by the Debtors' counsel under section 6.01 of the Plan shall become property of Reorganized Fitness, free and clear of any Claim, Lien, or Interest of any kind.

       **(d)**     **Allowance of Claims Subject to 11 U.S.C. § 502(d).**  Allowance of Claims will be subject in all respects to the provisions of section 502(d) of the Bankruptcy Code, except as provided by a Final Order of the Bankruptcy Court or a settlement among the relevant parties.

      **9.08.**   **Distributions Under the Plan**

       **(a)**     **Distributions to be Pro Rata Within a Class.**  Except as otherwise provided in the Plan, all Distributions constituting a partial payment to Holders of Allowed Claims within a specific Class shall be made on a Pro Rata basis to the Holders of Allowed Claims in such Class.

       **(b)**     **Means of Cash Payment.**  Cash payments made pursuant to the Plan will be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, by a commercially reasonable manner as the payor will determine in its sole discretion.

       **(c)**     **Delivery of Distributions.**  All Distributions to any Holder of an Allowed Claim shall be made at the address of such Holder set forth on the proof of Claim filed by such Holder (or at the last known addresses of such a Holder if no proof of Claim is filed or if Reorganized Fitness has been notified in writing of a change of address).  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Reorganized Fitness is notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest.  Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to Reorganized Fitness in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be deposited into a pool for redistribution to other Holders of Allowed Claims in the same Class as the intended recipient of the undeliverable Distribution, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred.  **Reorganized Fitness and its agents and professionals are under no duty to take any action to either attempt to locate any Holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any Holder of a Claim.**

       **(d)**     **Fractional Dollars; De Minimis Distributions.**  Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down),

with half dollars being rounded down.  Reorganized Fitness will not make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed Claim, and Reorganized Fitness shall retain any such payment.

**(e)     Unclaimed Property.**   Any Distributions that become Unclaimed Property shall be retained by Reorganized Fitness free and clear of any claims or restrictions thereon, and any entitlement of any Holder of any Claim or Interest to such Distributions shall be extinguished and forever barred.  Unclaimed Property shall be deposited into a pool for redistribution to other Holders of Allowed Claims in the same Class as the intended recipient of the Unclaimed Property.

**(f)     Allocation of Payments.**  Amounts paid under this Plan to Holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest that has accrued on such Claims but remains unpaid.

### 9.09.   Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to Reorganized Fitness, failing which, Reorganized Fitness may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

<u>**ARTICLE X**</u>
**VOTING AND EFFECT OF REJECTION BY
ONE OR MORE CLASSES OF CLAIMS**

### 10.01.  Impaired Classes to Vote

Each impaired Class will be entitled to vote separately to accept or reject the Plan.  A Holder of an Allowed Claim or Interest in an impaired Class may vote to accept or reject the Plan.  A Holder of a Claim or Interest as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.  A Holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated and undisputed in the Schedules, or equal to $1.00 if not so shown.

### 10.02.  Acceptance by Classes

A class of Claims or Interests will have accepted the Plan if its members vote to accept by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Interests in the Class actually voting to accept or reject the Plan.

### 10.03.  Section 1129(b) Cramdown

If any impaired class of Claims fails to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

The Debtors assert that the Plan provides for fair and equitable treatment of all Classes of Claims and Interests.

## ARTICLE XI
## RETENTION OF JURISDICTION

### 11.01.  Jurisdiction

Until the case is closed, the Bankruptcy Court will retain the jurisdiction as is legally permissible under applicable law, including under sections 105(a) and 1142 of the Bankruptcy Code, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against and Interests in the Debtors and to enforce all Estate Actions that may exist on behalf of the Debtors, over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtors or Reorganized Fitness from taking any action as may be necessary in the enforcement of any cause of action that may exist on behalf of the Debtors and that may not have been enforced or prosecuted by the Debtors.

### 11.02.  Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim or Interest and the reexamination of Claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims and Interests.  The failure by the Debtors to object to, or to examine, any Claim or Interest for the purposes of voting will not be deemed a waiver of their right or the right of Reorganized Fitness to object to, or to re-examine, any Claim or Interest in whole or in part.

### 11.03.  Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the assets of the Estate, (b) disputes concerning the allowance of Claims and Interests, and (c) all Estate Actions, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, for the Debtors or Reorganized Fitness to recover assets pursuant to the provisions of the Bankruptcy Code.

### 11.04.  Additional Purposes

The Bankruptcy Court will retain jurisdiction to the extent permitted by applicable law for the following additional purposes after the Effective Date:

    **(a)**    to hear and determine any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

    **(b)**    to issue injunctions, enter and implement other orders and take such other

actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated thereunder, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)     to hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument or other document governing or relating to any of the foregoing;

(d)     to construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(e)     to adjudicate matters arising in this case, including matters relating to the formulation and consummation of the Plan;

(f)     to enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtors or Reorganized Fitness and to impose any limitations, restrictions, terms and conditions on the title, rights, and powers as the Bankruptcy Court may deem necessary;

(g)     to hear and determine any dispute involving or affecting the existence, nature, scope, validity or enforceability of the Debtors' discharge and the releases referred to in Article VIII of the Plan and the Bankruptcy Code;

(h)     to enter a Final Decree closing these cases;

(i)     to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(j)     to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(k)     to hear and allow applications for fees and expenses pursuant to sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(l)     to decide issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(m)     to decide issues concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)     to adjudicate any issues concerning assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Claims;

(o)     to hear and determine any and all objections to any Claims (including Administrative Claims) or Interests, including the allowance, classification, priority, secured

status, compromise, estimation, or payment thereof;

       **(p)** to hear and determine any litigation, including but not limited to Estate Actions, or causes of action belonging to or commenced by a Debtor or Reorganized Fitness, any collection matters related thereto, any action to recover assets, and settlements thereof;

       **(q)** to hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien or security interest and any Claim associated therewith; and

       **(r)** to hear and to determine any other matter related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### 12.01. General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served by certified mail, return receipt requested, hand delivery, (iii) overnight delivery, (iv) first class mail, or (v) fax transmission, and (c) deemed to have been given or made when actually delivered or received addressed as follows:

–to the Debtor's counsel:

Patrick J. Neligan, Jr., Esq.
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, TX 75201
(214) 850-5301 (Fax)

–to Reorganized Fitness:

Keys Fitness Products
4009 Distribution Drive
Suite 250
Garland, Texas 75041, USA
P.O. Box 551239
Dallas, Texas 75355-1239

–with a copy to counsel for Reorganized Fitness:

Lewis Kruger, Esq.
Erez E. Gilad, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Fax: (212) 806-9024
ekay@stroock.com

## 12.02.  Termination of the Creditors Committee.

The Creditors Committee will continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code, and will perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.   On the Effective Date, the Creditors Committee will be dissolved and its members will be deemed released by the Debtors, their Estates, and Reorganized Fitness from (a) all their duties, responsibilities and obligations in connection with the Bankruptcy Cases, and (b) all claims and causes of action relating to or arising directly or indirectly from services performed.   On the Effective Date, the retention or employment of the Creditors Committee's Professionals and other agents will terminate, except as is necessary to address Fee Applications filed by the Creditors Committee or its Professionals.   Upon the dissolution of the Creditors Committee, no notice to the Creditors Committee that might otherwise be required pursuant to an order of the Bankruptcy Court shall be required.

## 12.03.  Asserting and Curing Default Under the Plan

Except as otherwise provided in the Plan, if Reorganized Fitness defaults under the provisions of the Plan (other than a default under the documentation executed in implementing the terms of the Plan, which documents may provide independent bases for relief concerning the assertion and cure of defaults), any creditor or party in interest desiring to assert a default shall provide Reorganized Fitness and its counsel with written notice of the alleged default. Reorganized Fitness will have thirty (30) days from receipt of written notice to cure the alleged default.   If the default is not cured, any creditor or party in interest may then file with the Bankruptcy Court, and serve on counsel for Reorganized Fitness, a motion to compel compliance with the applicable provision of the Plan.   The Bankruptcy Court, on finding a material default, will issue orders compelling compliance with the pertinent provisions of the Plan.

Notwithstanding the foregoing, a failure by Reorganized Fitness to make a payment to the Texas Comptroller of Public Accounts (the "Comptroller") or to Dallas County pursuant to the terms of the Plan or to remain current on post-Effective Date taxes shall be an event of default.  If Reorganized Fitness fails to cure an event of default as to the Comptroller or Dallas County within twenty (20) days after service of a written notice of default from the Comptroller or Dallas County, then, notwithstanding any other provision of the Plan, the Comptroller or Dallas County, as applicable, may (a) enforce the entire amount of all of its claims; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law, or (c) seek such relief as may be appropriate from the Bankruptcy Court.

## 12.04.  Compliance with Tax Requirements

In connection with the Plan, Reorganized Fitness will comply with any withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions will be subject to the withholding and reporting requirements, if any.

## 12.05.  Revocation or Withdrawal of the Plan

The Debtors, with the consent of JP Acquisition, which shall not be unreasonably withheld, reserve the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If the Debtors revoke or withdraw the Plan, or if confirmation or the Effective Date of the

Plan does not occur, then, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or Person in any further proceedings involving the Debtors.

### 12.06.  Modification of the Plan

The Debtors, with the consent of JP Acquisition, which shall not be unreasonably withheld, reserve the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Debtors, with the consent of JP Acquisition, which shall not be unreasonably withheld, further reserve the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, (b) the Debtors shall have complied with section 1125 of the Bankruptcy Code, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code.  A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

### 12.07.  Due Authorization

Each and every Holder of an Allowed Claim who elects to participate in the Distributions provided for in the Plan warrants that it is authorized to accept, in consideration of such Claim, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 12.08.  Implementation

The Debtors and Reorganized Fitness will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.

### 12.09.  Ratification

The Confirmation Order will ratify all transactions effected by the Debtors during the pendency of the Bankruptcy Case.

### 12.10.  Term of Injunctions or Stays

Unless otherwise provided herein or an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided for in this case under sections 105 or 362 of the Bankruptcy Code or otherwise and existing on the Confirmation Date will remain in full force and effect until the Effective Date.

### 12.11.  Integration Clause

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors, their creditors, and other parties-in-interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding the Plan or any of its provisions.

### 12.12.  Interpretation

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the articles, paragraphs and sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtors.  Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 12.13.  Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, at the request of the Debtors, will have the power to alter and interpret the term or provisions to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provisions held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.14.  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of (a) the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed or amended in connection with the Plan and (b) the state in which a Debtor or Reorganized Fitness was formed shall govern corporate governance matters with respect to such Debtor or Reorganized Fitness, in either case without giving effect to the principles of conflicts of law thereto.

### 12.15.  Exemption From Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. All recording officers and other entities whose duties include recordation of documents lodged

for recording shall record, file, and accept such documents delivered under the Plan without the imposition of any charge, fee, governmental assessment, or tax.


DATED:  September 11, 2008              KEYS FITNESS PRODUCTS, LP


                                       By:    /s/ Reagan Stewart (by permission)   
                                              Reagan Stewart- CRO


                                       KEYS BACKYARD, L.P.


                                       By:    /s/ Reagan Stewart (by permission)   
                                              Reagan Stewart- CRO